# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

FLORENCE STEWART

                                                    **CIVIL ACTION**

VERSUS

                                              **NO. 23-314-JWD-EWD**

FAMILY DOLLAR, INC., ET AL.

## RULING AND ORDER ON PENDING
## *DAUBERT* MOTIONS (DOCS. 79, 80, AND 81)

Before the Court are three similar and interrelated *Daubert* motions. First, there is the *Motion* in Limine *to Exclude the Expert Testimony of Neal Johnson and Joseph Barnes by Family Dollar, Inc. and Family Dollar Stores of Louisiana, LLC* (Doc. 79) ("Family Dollar Motion") brought by defendants Family Dollar, Inc. and Family Dollar Stores of Louisiana, LLC (collectively, "Family Dollar"). Plaintiff Florence Stewart ("Stewart" or "Plaintiff") opposes the Family Dollar Motion. (Doc. 88.) Family Dollar filed a reply. (Doc. 101.)

The second motion is *Southern Development of Mississippi, Inc.'s Motion* in Limine/Daubert *Challenge to Exclude the Trial Testimony and Evidence of Neal Johnson and Joseph Barnes and Request for Hearing* (Doc. 80) ("SDM Motion") brought by defendant Southern Development of Mississippi, Inc. ("SDM" or "Southern Development"). Plaintiff opposes it (Doc. 90), and SDM filed a reply (Doc. 100).

The final *Daubert* motion is *Ferrellgas' Motion to Limit or Exclude Expert Testimony* (Doc. 81) ("Ferrellgas Motion") brought by defendant Ferrellgas L.P., d/b/a Blue Rhino ("Ferrellgas"). Plaintiff opposes it (Doc. 89), and Ferrellgas filed a reply (Doc. 99.) The three motions are referred to collectively as the "Motions."

SDM "adopts by reference the arguments and evidence submitted by [its] co-defendants." (Doc. 80-2 at 9.) "Ferrellgas adopts by reference all arguments advanced by [its] co-defendants . . . ." (Doc. 81 at 2.)

The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Motions are granted in part and denied in part.

## I.     BACKGROUND

This case arises from a March 4, 2022, fall allegedly suffered by Plaintiff Florence Stewart in front of the Family Dollar Store in Jackson, La. (Doc. 79-1 at 1; Doc. 8 at 1.) Plaintiff alleges that she tripped on "an overextended bolt that was used to secure one of two yellow bollards protecting the propane tanks" situated on the concrete sidewalk in front of the store. (Doc. 8 at 1; *see also* Doc. 35 at 3–4, ¶ 12.) Plaintiff sued Family Dollar and SDM in state court (Doc. 1-4 at 4–6), and the matter was removed to this Court (Doc. 1).

Family Dollar filed a cross claim against SDM (Doc. 20) and a third-party complaint against Ferrellgas (Doc. 21). Plaintiff filed an amended complaint in which he sued Family Dollar, SDM, and Ferrellgas. (Doc. 35.)

The case is set for trial January 12, 2026.

## II.     SUMMARY OF ARGUMENTS OF THE PARTIES

### A.  Defendants

Family Dollar moves to exclude both experts for the same general reasons: "(1) both experts offer numerous legal opinions; (2) [their] testimony . . . attempt[s] to establish standards of care that [are] contrary to Louisiana law; (3) [they] offer testimony they are not qualified to give, most notably testimony regarding the cause of the accident at issue when neither expert is an accident reconstructionist; and (4) their testimony is duplicative." (Doc. 79 at 1–2.) More

specifically, Family Dollar argues that the experts should not be allowed to render (1) legal conclusions (Doc. 79-1 at 4–7); (2) opinions regarding guidelines and standards (*id*. at 7–12); (3) opinions regarding the accident and its cause (*id*. at 12–14); and (4) cumulative testimony (*id*. at 14).

These arguments are in large measure mirrored by the other Defendants. SDM maintains that these experts should be excluded because (1) they "are not qualified to offer opinions requiring interpretation of a contract" (Doc. 80-2 at 5–6); (2) they "seek to offer legal conclusions" (*id*. at 6–8); (3) their opinions "are unreliable" because they rely on standards dealing with walking surfaces and this is not one (*id*. at 8–9); and (4) their "opinions and testimony are duplicative" (*id*. at 9).

Ferrellgas formally adopts the arguments of its co-defendants. (Doc. 81 at 3.) It independently complains that (1) Barnes "lacks the qualifications to offer the opinions he offers" (Doc. 81 at 6; *see also id*. at 5–6);[1] (2) the opinions of both experts contain legal conclusions (Doc. 81 at 6); (3) their opinions are premised incorrectly on the idea that the bollards and bolts which secure them are "walking surfaces" (*id*. at 7–8, 9–10); and (4) the opinions are contrary to established law holding that "a 1 ½" elevation difference does not pose an unreasonable risk of harm" (*id*. at 2–3, citing *Lacaze v. Walmart Stores, Inc*., No. 20-696, 2022 WL 4227240 (M.D. La. 9/13/22) (deGravelles, J.)).

### B. Plaintiff

Not surprisingly, Plaintiff's responses to these charges are essentially the same as to each of the Defendants. As to the qualifications of the two experts, Plaintiff argues that (1) they are qualified to express the opinions given in their reports and depositions; and (2) any alleged

---

[1] Ferrellgas "takes no issue with architect Johnson's qualifications." (Doc. 81 at 9.)

weaknesses in qualifications are not grounds for exclusion but rather, are matters for the jury to consider after being tested by cross examination at trial. (Doc. 88 at 3–8; Doc. 89 at 4–11.)

Regarding the legal opinions allegedly given by the two experts and their interpretation of the contracts, Plaintiff argues that they did not offer impermissible legal opinions (Doc. 88 at 8–12; Doc. 90 at 4–9; Doc. 89 at 14–15) and an expert may base his opinions on "assumed" "pre-existing" legal duties (*id.*). Their "identification of . . . pre-existing duties in an expert report does not render the entirety of the experts' factual findings and premises safety evaluations as impermissible legal opinions." (Doc. 88 at 10.)

Plaintiff opposes the argument that the experts should not be allowed to opine regarding the alleged violation of industry standards by pointing the Court to cases which she argues support the right of experts like Johnson and Barnes to discuss various industry and other standards and give their opinion that one or more of the Defendants violated same. (Doc. 88 at 12–20.)

As to Defendants' charge that the experts' conclusion that the bolts in question constituted a "walkway" is incorrect, which renders this and the opinions which flow therefrom unreliable, Plaintiff responds that (1) the industry standards relied on are relevant and admissible (Doc. 88 at 12–20); (2) Defendants' arguments misconstrue what the experts are saying (i.e., they are not saying that the bolts are a walking surface but rather are opining that "the metal base plates and exposed bolts should be considered part of the walking surface for purposes of identifying trip hazards." (Doc. 90 at 9, citing expert report, Exhibit 3 at 99; *see also id.* at 9–11; Doc. 89 at 17–23.) Further, the fact that there is disagreement over the applicability and breach of industry standards is a matter for trial and does not render the expert testimony on the issue inadmissible under *Daubert*. (Doc. 90 at 11.)

In response to Ferrellgas' argument that the experts' opinions are contrary to *Lacaze* and similar cases and are therefore inadmissible, Plaintiff argues that *Lacaze* was procedurally different—a motion for summary judgment and not a *Daubert* motion. (Doc. 89 at 1–2; *see also* Doc 89 at 1–4; Doc. 88 at 17.) In addition, Plaintiff argues that *Lacaze* and the cases upon which it relied dealt with seams in a parking lot, and this case deals with a "small, rusted, camouflaged, and exposed bolt thread . . . located immediately outside the store's two front entrances." (Doc. 89 at 4.) Plaintiff insists that, in this case, unlike *Lacaze*, Stewart was in the midst of a turn at the time she tripped and the "almost camouflaged inverted bolt" was in her peripheral vision. (Doc. 89 at 11–12.)

On the issue of causation, Plaintiff writes that "Johnson and Barnes are not offering opinions about how the accident occurred or whether Plaintiff's fall caused her injuries." (Doc. 88 at 20.) And as to Defendants' allegation that the testimony of Johnson and Barnes is cumulative and duplicative, Plaintiff explains the differences in their testimony are based on the different areas of expertise from which they are testifying. (Doc. 88 at 21–23.) In summary, concludes Plaintiff, "Johnson and Barnes provide unique and non-redundant perspectives in different fields of study that would provide the jury with an understanding of the Louisiana code compliance failures and the executive safety program management failures." (Doc. 88 at 23.)

### C. Defendants' Replies

Regarding the issue of the experts' alleged legal conclusions, Family Dollar notes that Plaintiff only addressed the "duty" opinion of its experts and not their other legal conclusions and, as to Plaintiff's duty argument, it is "deeply flawed." (Doc. 101 at 2.) Plaintiff's argument that her experts' opinions are correct is disputed but, "more importantly, 'correctness' is not the test for

admissibility of legal opinions under Rule 702 . . . [since] [e]xperts are not permitted to render legal opinions, regardless of whether they are correct." (*Id*. at 3, citation omitted.)

Family Dollar repeats its argument that because "a height difference of ¾" – 1 ¾" is not an unreasonable risk of harm," Johnson and Barnes's testimony regarding safety rules and standards is irrelevant. (*Id*. at 4–9.) Furthermore, argues Family Dollar, the standards relied on by Plaintiff's experts "do not create a duty under La. R.S. 9:2800.6." (*Id*. at 8.) It repeats its charge that the experts are not qualified to give legal conclusions or opinions regarding causation. (*Id*. at 9.)

In its reply brief, SDM repeats its argument that Plaintiff's experts offer prohibited legal conclusions and "misstate facts and testimony in evidence in reaching their conclusions." (Doc. 100 at 3.) SDM also maintains that the experts' opinions regarding SDM's obligations under the contract are incorrect since it had no duty under the contract to maintain items "placed on the property by Family Dollar and/or Ferrellgas." (*Id.* at 2.) Finally, SDM argues that the bollards are not part of the walkway and therefore are not anything which SDM could possibly have an obligation to maintain. (*Id*. at 2.) It points the Court to Louisiana Civil Code article 466, which it contends demonstrates that the bollards would not have been "a component part[ ] of a building or other construction" since they could have been removed "without substantial damage to themselves or to the building or [the] other construction." (*Id*. at 2.)

Ferrellgas' short reply brief accuses Plaintiff's experts of "conjur[ing] a fiction worthy of *Alice in Wonderland*" since (as they argue in their opening brief), the bollards are not walking surfaces and therefore the relied upon standards are not applicable. (Doc. 99 at 1–3.)

## III.    STANDARD

### A.  Requirements of Rule 702

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or

otherwise" if the rule's preconditions are met. Congress amended Rule 702 effective December 1, 2023[2] to read as follows:

> Rule 702. Testimony by Expert Witnesses
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

### B. Proponent's Burden

The Advisory Committee Notes[3] to the recently amended Rule 702 explain that

> [T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility

---

[2] The amendments "shall take effect on December 1, 2023, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Fed. R. Evid. Refs & Annos (2023).

[3] "The Advisory Committee Notes are instructive on the drafters' intent in promulgating the federal rules." *United States v. Navarro*, 169 F.3d 228, 237 (5th Cir. 1999) (citing *Williamson v. United States*, 512 U.S. 594, 614–15 (1994) (Kennedy, J., concurring) ("When as here the text of a Rule of Evidence does not answer a question that must be answered in order to apply the Rule, and when the Advisory Committee's Note does answer the question, our practice indicates that we should pay attention to the Advisory Committee's Note. We have referred often to those Notes in interpreting the Rules of Evidence, and I see no reason to jettison that well-established practice here.")); *see also Ronaldo Designer Jewelry, Inc. v. Cox*, No. 17-2, 2020 WL 109830, at *1 (N.D. Miss. Jan. 9, 2020) ("Although not binding, the interpretations in the Advisory Committee Notes 'are nearly universally accorded great weight in interpreting federal rules.'" (quoting *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (citation omitted))); *cf. also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1029 (4th ed. 2023) ("In interpreting the federal rules [of civil procedure], the Advisory Committee Notes are a very important source of information and direction and should be given considerable weight. Although these Notes are not conclusive, they provide something akin to a 'legislative history' of the rules and carry, in addition, the great prestige that the individual members of the successive Advisory Committees, and the Committees themselves, have enjoyed as authorities on procedure.").

requirements set forth in the rule. *See* Rule 104(a). This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Huddleston v. United States*, 485 U.S. 681, 687 n.5 (1988) ("preliminary factual findings under Rule 104(a) are subject to the preponderance-of-the-evidence standard").

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

### C. Role of Court in Deciding Daubert Challenge

When *Daubert*[4] is invoked to challenge an expert's opinions, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic System, Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. The Supreme Court has held that "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

A district court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g., General ElectricCo. v. Joiner*, 522 U.S. 136, 138–39 (1997) (appellate

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993).

courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony . . . ."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

Federal Rule of Evidence 104(a) states that "[t]he court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." The Advisory Committee Notes to the 2023 amendments to Rule 702 emphasize that the 2023

> amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702. Similarly, nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection. On the other hand, it does not permit the expert to make claims that are unsupported by the expert's basis and methodology.

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (internal citations omitted)

(relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38*

*Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

> As the Court in *General Electric Capital Business Funding Corp. v. S.A.S.E.
> Military Ltd.*, stated, "Experts should be excluded only if their testimony is so
> fundamentally unsupported that it cannot possibly help the factfinder." No. SA-
> 03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing
> *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Trinity
> Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2020 WL
> 1309892, at *7 (M.D. La. Mar. 19, 2020) (deGravelles, J.).

*Smiley v. New Hampshire Ins. Co.,* No. 17-1094, 2021 WL 292449, at *8 (M.D. La. Jan. 28,

2021) (deGravelles, J.)

### D. Factors for Measuring Reliability of Expert's Opinions

The Fifth Circuit held that *Daubert* made

> "general observations" intended to guide a district court's evaluation of
> scientific evidence. The nonexclusive list includes "whether [a theory or
> technique] can be (and has been) tested," whether it "has been subjected to peer
> review and publication," the "known or potential rate of error," and the
> "existence and maintenance of standards controlling the technique's operation,"
> as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its
> overarching subject is the scientific validity and thus the evidentiary relevance
> and reliability—of the principles that underlie a proposed submission. The
> focus, of course, must be solely on principles and methodology, not on the
> conclusions that they generate.

*Watkins*, 121 F.3d at 989 (internal citations omitted).

Cases following *Daubert* have expanded upon the factors listed above and explained

that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case.

*See, e.g.*, *Joiner*, 522 U.S. at 142; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir.

2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011 at *1 (M.D. La. Oct. 12, 2010) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The Supreme Court recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the Fifth Circuit has concluded that "soft social sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co*., 130 F.3d 1287, 1297 (8th Cir. 1997)).

In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies," trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone*, 288 F.3d at 247).

### E.  Correctness of the Expert's Opinions

It is not the role of the court to decide whether an expert's opinions are correct or, in

the case of competing and conflicting expert opinions, which one is right or even which one

has the greater support.

> It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . . *The evidentiary requirement of reliability is lower than the merits standard of correctness.*'" Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

Fed. R. Evid. 702 advisory committee's note to 2023 amendment (emphasis added).

## IV.  DISCUSSION

### A.  Qualifications

The challenged experts are Neal Johnson ("Johnson") and Joseph Barnes ("Barnes").

Johnson's credentials as a professional architect and forensic consultant are summarized as a part

of his report. (Doc. 79-2 at 4.) His full curriculum vitae is found at Doc. 79-4 at 1–5. Barnes'

qualifications as a safety professional are summarized at Doc. 79-3 at 4–5, and his full CV is found

at Doc. 79-5. With the exception of Ferrellgas (and then only as to Joseph Barnes), Defendants

don't challenge their qualifications broadly in the areas in which they are educated and trained

(i.e., architecture and safety). However, all Defendants challenge their qualifications to opine on

certain specific subjects which Defendants argue are outside their expertise, such as interpretation

of contracts, duties under Louisiana law and other matters of law. (*See, e.g.*, Doc. 79 at 1; Doc. 80-

2 at 5–8; Doc. 81 at 6.) In addition, Family Dollar argues that Johnson and Barnes are not qualified

to render opinions about the accident itself or its cause. (Doc. 79-1 at 12–14.)

Although the Court has reviewed their qualifications in detail, the Court provides a very

brief summary of the qualifications of each for context.

### 1. *Summary of Qualifications of Neal Johnson*

Johnson is a Licensed Professional Architect with a B.S degree in Architecture from University of Louisiana at Lafayette. (Doc. 79-2 at 4.) He is a professional member of the American Institute of Architects, Human Factors and Ergonomics Society, National Safety Council, and International Code Council. (*Id*.) His forensic consulting has primarily been in the areas of architecture, premises safety, and safety engineering. (*Id*.)

### 2. *Summary of Qualifications of Joseph Barnes*

Barnes has a B.A. in Business Administration from America Intercontinental University, an M.S. in Occupational Safety and Health from Columbia Southern University, an MBA from Columbia Southern University and is a Doctoral Candidate in Occupational Safety and Health at Columbia Southern University. (Doc. 79-5 at 1.) He serves as a member of the Adjunct Faculty at Texas A&M University as an Instructor in Risk Management and OSHA. (*Id*. at 2.) He holds himself out to be a Safety and Health Professional and safety expert. (*Id*. at 1.)

### 3. *Standard Regarding Qualifications*

Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds*. The Supreme Court in *Kumho*, 526 U.S. at 148–49, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience. *See also LeBlanc v. Chevron USA, Inc*., 396 F. App'x. 94, 100 (5th Cir. 2010) (per curiam) (unpublished). Additionally, the 2000 Advisory Committee Notes to Rule 702 state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience," which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702

advisory committee's note to 2000 amendment.

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id.* at 412 (quoting *Kumho*, 526 U.S. at 149–50); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001). ("[T]here is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" (emphasis added)).

Courts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be "qualified" as an expert on that issue. *See, e.g.*, *BP Expl. & Prod., Inc. v. Callidus Techs, L.L.C.*, No. 02-2318, 2003 WL 26118097 at *1–2 (E.D. La. Apr. 8, 2003). Furthermore, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson*, 822 F.3d at 199 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Nevertheless, the Fifth Circuit has stated that it "require[s] that a '[]witness's qualifying training or experience, and resultant specialized knowledge, are *sufficiently related* to the issues and evidence before the trier of fact such that the witness's proposed testimony will help the trier of fact.'" *Macy v. Whirlpool Corp.*, 613 F. App'x 340, 345 (5th Cir. 2015) (emphasis by *Macy*) (quoting *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013)).

### 4. Discussion Regarding Qualifications

The Court finds that both Johnson and Barnes are well qualified to give opinions within their areas of expertise, education, training and experience. For Johnson, this includes generally

architecture, premises liability, code compliance and human factors/ergonomics. For Barnes, this includes safety and safety program management. Both possess extensive education and experience in their respective fields. Those qualifications are set out in detail in their respective resumes and will not be detailed here. Again, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson*, 822 F.3d at 199. Here the qualifications of both experts far exceed this low bar.

However, the Court finds that neither expert has sufficient qualifications to provide expert testimony on the interpretation of contracts. Furthermore, the Court addresses separately herein Defendants' objections to the opinions of Johnson and Barnes which allegedly voice legal conclusions, including opinions regarding the interpretation of contracts.

Family Dollar argues separately that "[t]hese experts' education, training, and experience do not qualify them to opine about how the accident occurred or what caused it [because] [n]either is an accident reconstructionist." (Doc. 79-1 at 13.) Family Dollar lists five specific statements made by the experts which they argue deal with the issue of causation and about which they should not be allowed to testify; three are by Johnson, and two are by Barnes. (Doc. 79-1 at 12–13.) Plaintiff responds that "Johnson and Barnes are not offering opinions about how the accident occurred or whether Plaintiff's fall caused her injuries." (Doc. 88 at 20.)

With respect to the first complained of statement (Doc. 79-1 at 12, quoting Doc. 79-2 at 5–6), this appears to be a simple background statement regarding the accident and not an attempt at accident reconstruction. The Family Dollar Motion is denied in this regard. Regarding the two statements dealing with the "responsibility" of Family Dollar and Ferrellgas as it pertains to the installation and maintenance of the bollards (Doc. 79-1 at 13, quoting Doc. 79-2 at 6), this is dealt

with in connection with Defendants' objections to conclusions of law. The fourth item is a statement by Barnes which does not appear to be an attempt at accident reconstruction although he opines that the bolt exceeds "the threshold for known tripping hazards." (Doc. 79-1 at 13, quoting Doc. 64-17 at 10.) This objection is overruled. The final item (Doc. 79-1 at 13, quoting 79-3 at 8) is deferred to trial as there is insufficient context for the Court to rule.

More generally on the issue of causation, the Court notes that while Plaintiff is right that neither expert offers "opinions about . . . whether Plaintiffs' fall caused *her injuries*" (Doc. 88 at 20, emphasis added), Johnson does offer a very detailed statement as to what he considers to be the "principal causative factor related to the incident." (Doc. 79-2 at 15.) Family Dollar argues that because "[n]either [expert] is an accident reconstructionist . . . they should not be permitted to testify regarding the cause of the accident." (Doc. 79-1 at 13–14, citing *Alpizar v. John Christner Trucking, LLC*, 568 F. Supp. 3d 714 (W.D. Tex. 2021), and *Franco v. Mabe Trucking Co*., No. 5:17-CV-00871, 2019 WL 1285381 (W.D. La. Mar. 20, 2019).)

The Court disagrees with Family Dollar and finds that both experts are qualified to testify regarding whether the conduct of Defendants and their alleged violation of various codes played a substantial role in causing the accident. The cases cited by Family Dollar are very fact specific and factually distinguishable, and neither stands for the proposition for which they are cited, i.e. that one needs to be qualified as an "accident reconstructionist" in order to opine whether the conditions they identified played a causal role in the accident. Defendants' Motions are denied in this regard.

### B. Conclusions of Law

#### 1. Standard Regarding Legal Conclusions

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. C.I.R.*, 98

F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Jones v. Blue Cross Blue Shield of La.*, No. 16-CV-340-JWD-RLB, 2018 WL 585543, at *7 (M.D. La. Jan. 29, 2018) (deGravelles, J.).[5]

"The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. In *Owen*, the Fifth Circuit explained:

> The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well is a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

*Id.*

The Fifth Circuit has described permissible ultimate-issue questions as those which are "fact-oriented." *United States v. Lueben*, 812 F.2d 179, 183–84 (5th Cir.), *opinion vacated in part*, 816 F.2d 1032 (5th Cir. 1987). As stated by Judge Vance:

> Of course, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(A). Moreover, testimony should not be excluded simply because a witness is trained in the law or because the testimony will touch on legal topics. In distinguishing admissible testimony from inadmissible testimony, *the task for the Court is to ask whether the expert's opinions bear on some factual inquiry or whether they bear solely on the legal conclusions that are urged*. In other words, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."

---

[5] Even in cases where legal expert opinion is appropriate, "the Court has the final and ultimate authority and responsibility to instruct the jury on the law which it is to apply to the facts of the case." *Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 341 (M.D. La. 2021) (deGravelles, J.) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)).

*Woodard v. Andrus*, No. 03-2098, 2009 WL 140527, at *2 (W.D. La. Jan. 20, 2009) (quoting

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997)

(emphasis added)).

### 2.  *Discussion Regarding Conclusions of Law*

Family Dollar sets out in detail the opinions it contends are impermissible legal conclusions

rendered by Johnson (Doc. 79-1 at 4–5) and Barnes (*id*. at 5–6). *See also* briefing on this point by

SDM (Doc. 80-2 at 6–8), and Ferrellgas (Doc. 81 at 6). SDM complains similarly regarding the

experts' interpretations of the contract. (Doc. 80-2 at 5–6.)

Neither Johnson nor Barnes will be allowed to give legal opinions since "the Fifth Circuit

has 'repeatedly held that this rule does not allow an expert to render conclusions of law.'" *Snap-*

*Drape*, 98 F.3d at 198.  However, as stated above "[t]he task of separating impermissible questions

which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*,

698 F.2d at 240. The Court will defer ruling on specific questions until the time of trial but provides

the following guidance to the parties for purposes of trial.

First, "[e]xpert testimony is often required to establish an industry's standard of care."

*Butler v. BNSF Ry. Co*., No. 1:22-CV-00367-MJT, 2024 WL 2735020, at *5 (E.D. Tex. Mar. 26,

2024) (citing *Jones for & on Behalf of Est. of Butler v. Mobile Medic Ambulance Serv., Inc*., No.

3:20-CV-383-KHJ-LGI, 2021 WL 6144789, at *3 (S.D. Miss. Nov. 4, 2021) (noting that a

"standard of care must be supported by expert testimony").

Second, in establishing an industry's standards, it is appropriate for an expert to look to

applicable governmental regulations and published industry guidelines or standards. "Qualified

experts are permitted to offer opinion testimony as to industry standards or norms and whether or

not they were followed in a particular case, as long as such opinions involve questions of fact

rather than purely legal matters." *Am. Can! v. Arch Ins. Co*., 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022) (quoting *Flanagan v. City of Dallas*, No. 3:13-CV-4231-M-BK, 2017 WL 2817424, at *1 (N.D. Tex. May 25, 2017) (citing *Waco Int'l, Inc. v. KHK Scaffolding Hous., Inc.,* 278 F.3d 523, 533 (5th Cir. 2002)). *See also Olivier v. Exxon Mobil Corp*., 596 F. Supp. 3d 606, 610 (M.D. La. 2022) (finding that the expert's opinions were "based upon sufficient facts or data, [were] the product of reliable principles and methods, and the principles and methods were reliably applied to the facts of the case" because they were, in part, supported by the expert's "thorough knowledge of the applicable regulations and industry standards" and his identification of "a plethora of federal regulations"); *Robinson v. Ethicon, Inc*., 588 F. Supp. 3d 726, 732 (S.D. Tex. 2022) ("The court finds that, in light of Pence's extensive experience and her assertion that she applied the industry standards, her discussion of the standards in her report, and her deposition testimony, Robinson has shown that Pence's methodology is reliable.").

Third, a qualified expert can "[explain] to the jury what industry standards are and how, in his opinion, Defendant's actions failed to meet those standards." *Butler v. BNSF Ry. Co*., 2024 WL 2735020, at *5.

Fourth, "[a] plaintiff may properly offer a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence per se." *Olivier*, 596 F. Supp. 3d at 611 (quoting *Melerine v. Avondale Shipyards, Inc*., 659 F.2d 706, 713 n.22 (5th Cir. 1981), *abrogated on other grounds by Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723 (5th Cir. 2018)). "As the Fifth Circuit has held, an expert may reach a conclusion that applies a federal regulation to the facts of the case." *Olivier*, 596 F. Supp. 3d at 611.[6]

---

[6] By way of example, the Court in *Olivier* found that the following two opinions did not constitute legal opinions and could properly be presented to the jury:

Fifth, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was [or was not] satisfied, but he may not testify as to whether the legal standard has been [or has not been] satisfied." *Olivier*, 596 F. Supp. 3d at 611 (citing *Woodard*, 2009 WL 140527, at *2). *See also Butler*, 2024 WL 2735020, at *5.

Sixth, whether or not industry standards were met may be relevant factor in answering the question of whether a condition or a product was unreasonably dangerous. *See Johnson v. State Through Dep't of Transp. & Dev.*, 2017-0973 (La. App. 1 Cir. 4/3/19); 275 So. 3d 879, 894, *writ denied*, 2019-00676 (La. 9/6/19); 278 So. 3d 970 (citing *Aucoin v. State Through Dep't of Transp. & Dev.*, 97-1938 (La. 4/24/98); 712 So. 2d 62, 66, *overturned on other grounds by statute*) ("[W]hether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether the roadway is unreasonably dangerous."); *Nester v. Textron, Inc*., No. 1:13-CV-920-DAE, 2015 WL 7272249, at *21 (W.D. Tex. Nov. 17, 2015) (approving expert's methodology of reliance on "standards and guidelines for product warnings" and "American National Standards Institute ('ANSI') guidelines for 'product safety signs and labels'" to support conclusion that product warnings were inadequate.).

The Court finds that some, but not all, of the objected to opinions rendered by both experts contain impermissible legal conclusions. For example, when Barnes opines that "[t]he *defendants owed a duty under La. R.S. 9:2800.6*, safety management planning industry standards and practices, and acceptable regulations to identify and to control this tripping hazard in accordance

---

1) Exxon Management's failure to recognize and understand their responsibilities under 33 CFR created an unmitigated hazard to personnel walking along a Skid Beam to inadvertently, unexpectedly, and/or unknowingly have their footing encounter a Slot[.]

2) Exxon was complacent, failed to communicate and neglected to effectively eliminate, control and/or mitigate the hazards associated with affected employees working around a Skid Beam with Open Hole Hazards.

*Olivier,* 596 F. Supp. 3d at 610–11.

with the hierarchy of safety controls" (Doc. 64-17 at 10, Affidavit of Joseph Barnes, emphasis added), he is giving a legal opinion as it regards La. R.S. 9:2800.6. In his unequivocal statement, Barnes is impermissibly telling the jury what Defendants' duty is under a specific Louisiana statute, La. R.S. 9:2800.6. This is a clear expression of a legal conclusion.

The Court rejects Plaintiff's argument that this statement is acceptable because Barnes is "identifying" and/or "assuming" a "pre-existing duty." (Doc. 88 at 8–12; Doc. 90 at 4–9; Doc. 89-at 14–15 (cleaned up).) That a legal duty may be "pre-existing" (by which the Court takes Plaintiff to mean, existing before and at the time of the accident), doesn't allow an expert to define for the jury what that legal duty is or who owes it. Similarly, when the expert "identifies" the legal duty, he has expressed an opinion that the duty exists. Finally, while Plaintiff argues that the experts are merely "assuming" that the duties existed for purposes of their opinions, that is not how some of their opinions are expressed.

The remainder of Barnes' statement, that the Defendants "owed a duty under . . . safety management planning, industry standards and practices, and applicable regulations to identify and to control this tripping hazard in accordance with the hierarchy of safety controls" (Doc. 64-17 at 10), is a closer call only because of Barnes' use of the word "duty." As currently phrased, the Court finds that Barnes is simply stating that he believes that there are standards and regulations applicable to one or more Defendants which require the Defendants "to identify and to control this tripping hazard in accordance with the hierarchy of safety controls." (Doc. 64-17 at 10.) The substance of this opinion is acceptable since, as explained above, a qualified expert can testify regarding an industry or governmental standard or regulation and state that, in his or her opinion, (a) the standard or regulation applies to the facts of the case; (b) it applies to the defendant; and (c) the defendant failed to follow or abide by the standard or regulation. *Butler*, 2024 WL 2735020, at

*5; *Olivier*, 596 F. Supp. 3d at 611. However, by phrasing his opinion as one regarding the defendant's "duty," his statement appears to opine on the Defendants' legal duty, which he cannot do. This runs the risk of confusing or misleading the jury. Therefore, Barnes may give the substance of the opinion (e.g., that the relied upon standards applied to one or more of Defendants and they failed to follow that standard in a given way) but without using the word "duty." This ruling applies also to the other instances in Barnes' report where he has stated that a defendant "owed a duty" or "failed in their duty" or the like.

With respect to references to "standard of care," the Court notes again that "[e]xpert testimony is often required to establish an industry's standard of care." *Butler*, 2024 WL 2735020, at *5 (citing *Jones*, 2021 WL 6144789, at *3) (noting that a "standard of care must be supported by expert testimony"). However, Plaintiff's experts will not be allowed to suggest that such is a legal standard and Plaintiff's counsel is cautioned to not elicit the opinions in such a way as to suggest that it is.

The Court also finds that neither expert may provide opinion testimony as to what the parties' "responsibilities" were under the two contracts at issue including the contract between SDR and Family Dollar and the contract between Family Dollar and Ferrellgas. (*See, e.g.*, Johnson's opinion that "Defendant Southern Development was responsible for maintaining the exterior premises in accordance with the terms of its lease agreement with Family Dollar." (Doc. 79-2 at 6).) These are legal conclusions which are not appropriate for these experts to provide.[7]

---

[7] It is true that experts are frequently asked to assume certain facts and then base their opinion on assumed but contested facts. This is proper. *Terral River Serv., Inc. v. SCF Marine, Inc.*, No. 3:19-CV-00406, 2020 WL 7711365, at *5 (W.D. La. Dec. 28, 2020) ("[A]n expert witness may provide opinions regarding factual issues and rely on factual assumptions in forming those opinions . . . ." (quoting *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 834 (N.D. Ill. 2013)).

The experts will be permitted to opine as to whether Defendants knew or should have known of what the two experts consider a dangerous condition and failed to take corrective action or warn of same. An example is Johnson's opinion (Doc. 79-2 at 3), objected to by Family Dollar (Doc. 79-1 at 4–5): "Further, each of the defendants knew or should have known, of such danger, yet ultimately failed to make the conditions safe or, at the very least, adequately warn of such condition as discussed in this report." This is an opinion regarding the facts and not a legal conclusion. *See Olivier*, 596 F. Supp. 3d at 610–11 (approving the following similar expert opinions: "1) Exxon Management's failure to recognize and understand their responsibilities under 33 CFR created an unmitigated hazard to personnel walking along a Skid Beam to inadvertently, unexpectedly, and/or unknowingly have their footing encounter a Slot[.] 2) Exxon was complacent, failed to communicate and neglected to effectively eliminate, control and/or mitigate the hazards associated with affected employees working around a Skid Beam with Open Hole Hazards".)

In summary, Defendants' Motions are granted in that neither expert will be permitted to give legal opinions or draw legal conclusions. However, it bears repeating that "[t]he task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. As stated in both *Owen* and Advisory Committee Notes to Rule 704, whether an opinion is permissible or impermissible oftentimes depends on the precise way the question is asked. *Id*. Therefore, rather than rule on each of the specific statements identified and objected to by Defendants, the Court will defer ruling on any of the other specific issues raised until trial so they can be viewed in context. However, the Court cautions Plaintiff's counsel that the import of the Court's ruling should be clear, and the Court expects counsel to follow it. If either side is confused or needs clarification before trial, the Court may take it up at the Pretrial Conference or out of the presence of the

jury.

### C.  Opinions Regarding Standards and Walkways

#### 1.  Arguments of the Parties

Family Dollar objects to the opinions of the experts that the bolts and bollards violated certain standards is impermissible because the opinions are "legally incorrect, as the standards and guidelines cited by the experts do not establish the standard of care." (Doc. 79-1 at 7; *see also id*. at 7–10.) Family Dollar maintains that since "Louisiana courts have repeatedly held that elevations of up to two inches do not present an unreasonable risk of harm," and because the bolt was of a smaller than two inch height, the experts' references to standards and codes is "unhelpful to the trier of fact . . . as [to] the question of whether a condition is 'unreasonably dangerous' for purposes of La. R.S. 9:2800.6." (Doc. 79-1 at 10.) In its Reply, Family Dollar puts it even more bluntly: "[T]he law is that a height difference of ¾" – 1 ¾" is not an unreasonable risk of harm." (Doc. 101 at 4.)

In addition, each of the Defendants argues that Plaintiff's experts conflate the offending bolt with a walkway, improperly base their conclusions (particularly those regarding standards for walkways) on this error, and therefore shouldn't be allowed to testify to same. (Doc. 79-1 at 7–12 (Family Dollar); Doc. 80-2 at 8–9 (SDM); Doc. 81 at 7–10 (Ferrellgas).)

Plaintiff responds that (a) industry standards are generally relevant and admissible (Doc. 88 at 12–20); (b) Defendants' arguments misconstrue what the experts are saying (i.e., they are not saying the bolts are a walking surface but rather are opining that "the metal base plates and exposed bolts should be considered part of the walking surface for purposes of identifying trip hazards." (Doc. 90 at 9, citing expert report, Exhibit 3 at 99; *see also id*. at 9–11; Doc. 89 at 16–23) and (c)

the fact that there is disagreement over the applicability and breach of industry standards does not render expert testimony on the issue inadmissible under *Daubert*. (Doc. 90 at 11.)

In their replies, Defendants largely repeat arguments made in their opening briefs. (Doc. 101 (Family Dollar); Doc. 100 (Southern Development); Doc. 99 (Ferrellgas).)

## 2. Discussion

First, as explained above, a properly qualified expert (and the Court has found that both of Plaintiff's experts are properly qualified) may give opinion testimony regarding applicable industry standards and whether they have been violated. *Olivier*, 596 F. Supp. 3d at 610–11. Second, as is explained in detail in this Court's ruling on Defendants' Motion for Summary Judgment, the Louisiana Supreme Court has made clear that whether landowner has breached its duty to "discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence," is governed "by the risk/utility balancing test [which] consider[s] . . . four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23); 359 So. 3d 467, 473–74 (citations omitted).[8]

Contrary to Family Dollar's position, there is no bright line height, size or other characteristic or feature of a premises defect which governs as a matter of law whether a condition

---

[8] In *Farrell*, 359 So. 3d at 472, "[p]laintiffs assert[ed] liability predicated on La. Civ. Code arts. 2315, 2316, 2317, and 2317.1" for a fall which occurred at the edge of a Circle K parking lot. The court found that "[w]hether a claim arises in negligence under La. Civ. Code art. 2315 or in premises liability under La. Civ. Code art. 2317.1, the traditional duty/risk analysis is the same." *Id*. at 473. Here, Plaintiff's claim against Family Dollar is based in part on La. R.S. 9:2800.6, the merchant liability statute. (Doc. 35 at 5, ¶ 16.) In determining whether the allegedly unsafe condition presents an unreasonable risk of harm under 9:2800.6, the same four-part risk/utility balancing test is used as that utilized in *Farrell*. *Lee v. AutoZone Stores, LLC*, No. CV 17-17686, 2019 WL 95465, at *2 (E.D. La. Jan. 3, 2019).

constitutes an unreasonably dangerous condition. As *Farrell* makes clear, other factors such as the location of the alleged defective condition may play a critical role on this issue.

> Thus, it is conceivable that an allegedly hazardous condition, as alleged in this case, located at the entrance to the store, may ultimately be determined to be unreasonably dangerous; whereas, the same condition, located in the corner of a parking lot, may not be unreasonably dangerous because the likelihood and magnitude of harm is vastly different. It is also relevant that the pool of water was not located in a customarily traversed area, such as the entrance to the store, where patrons would likely encounter it or be forced to encounter it to go into the location. It also was not located near the gas pumps, where, again, it would necessarily or likely be encountered by customers.

*Farrell*, 459 So. 3d at 474–75.

Defendants rely on this Court's decision in *Lacaze v. Walmart Stores, Inc.*, 20-296, 2022 WL 4227240 (M.D. La. 9/13/22) (deGravelles, J.), (Doc. 79-1 at 10–11 (Family Dollar); Doc. 81 at 2–3 (SDM) (arguing that Plaintiff's experts' opinions are contrary to established law holding that "a 1 ½" elevation difference does not pose an unreasonable risk of harm.")). Defendants' reliance on *Lacaze* is misplaced. Although rendered before *Farrell*, it is entirely consistent with it. In *Lacaze*, the Court stated: "The Court stresses that the height of the elevation is only one factor of the four-part test, and it is certainly possible that a height differential of 1-1/2 inches or less might, in a different setting, pose an unreasonable risk of harm." *Lacaze*, 2022 WL 4227240, at *7, n.4. Furthermore, unlike *Lacaze*, where this Court noted that the plaintiff had shown no authority "showing that [ADA and OSHA] standards apply or are relevant to a shopper like [the plaintiff]," *id.* at *9, here both experts explain in detail how their cited standards apply to patrons of a retail establishment like the Family Dollar store (Doc. 79-2 at 9–15; Doc. 79-3 at 8–34).

The *Farrell* court stated that "[w]hether there was a breach of the duty owed is a question of fact or a mixed question of law and fact." *Farrell*, 459 So. 3d at 474 (citation omitted). Thus, the testimony of both Johnson and Barnes to the effect that Defendants were subject to certain

industry standards which they failed to follow informs the question of whether there was an unreasonably dangerous condition and whether Defendants breached their duties under Louisiana law. Defendants' Motions are denied on this ground.

Regarding Defendants' objections to the experts' testimony based on the alleged erroneous conflation of walkway standards with the bolt, plate, and bollards located on the walkway (Doc. 79-1 at 7–12 (Family Dollar); Doc. 80-2 at 8–9 (SDM); Doc. 81 at 7–10 (Ferrellgas)), the Court agrees with Plaintiff that a fair reading of the experts' testimony in this regard is that the experts are not saying the bolts are a walking surface but rather are opining that "the metal base plates and exposed bolts should be considered part of the walking surface for purposes of identifying trip hazards." (Doc. 90 at 9, citing expert report, Exhibit 3 at 99; *see also id*. at 9–11; Doc. 89 at 17–23). In any event, this objection is one which addresses the merits of the experts' testimony and not their qualifications or methodology. Hence, it is not a basis for exclusion but is rather a matter which most appropriately should be addressed on cross examination. As stated previously:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Scordill*, 2003 WL 22427981, at *3 (internal citations omitted) (relying on, among others, *Rock*, 483 U.S. at 61, and *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d at 1077).

### D. Alleged Cumulative and Duplicitous Testimony

### 1. Arguments of the Parties

Family Dollar and SDM both object to the testimony of Johnson and Barnes as being duplicative and cumulative. (Doc. 79-1 at 14 (Family Dollar); Doc. 80-2 at 9 (SDM).) Indeed, says Family Dollar, "[t]heir testimony is not just similar – it is nearly identical," with both experts testifying that "the bolt protruded too high from the pavement and that the pavement was not wide enough," and with both experts relying on the same standards. (Doc. 79-1 at 14.) Plaintiff responds that their testimony is "not 'nearly identical,'" with "Barnes' executive-based safety analysis [being] distinct from Johnson's architecture-based analysis, underscoring the necessity of both experts' contributions to the case." (Doc. 88 at 22.)

### 2. Discussion

"It is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court." *Leefe v. Air Logistics, Inc*., 876 F.2d 409, 410 (5th Cir. 1989) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.), *cert. denied* 471 U.S. 1126 (1985); Fed. R. Evid. 403). However. "the Fifth Circuit instructs that '[t]he exclusion of evidence under Rule 403 should occur only sparingly.'" *Thomas v. W&T Offshore, Inc*., No. CV 16-14694, 2018 WL 4095099, at *3 (E.D. La. Aug. 27, 2018) (quoting *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993)).

The Fifth Circuit has made clear that experts from different disciplines can testify about the same subject so long as each has sufficient expertise within his field to allow each to give reliable expert testimony on that subject. *Carlson*, 822 F.3d at 200 ("A medical degree is not a prerequisite for expert testimony relating to medicine. For example, we have held that scientists with PhDs were qualified to testify about fields of medicine ancillary to their field of research. *See, e.g.*, *Dawsey v. Olin Corp*., 782 F.2d 1254, 1262–63 (5th Cir. 1986) (holding a biochemist who

studied the effects of phosgene on animals was 'well qualified . . . to extrapolate his research to humans'")).

More importantly, the fact that two experts may hold the same conclusion does not by itself render the opinions cumulative so long as the experts' opinions are reached through different disciplines. *Sanchez v. Swift Transp. Co. of Ariz., LLC*, No. 4:15CV15-LG, 2017 WL 5643554, at *3 (W.D. Tex. July 19, 2017) ("Even though the conclusions are the same, the two doctors approached their analysis of Plaintiffs' medical conditions from different vantage points.").

> Additionally, the Fifth Circuit has not put a precise limit on the number of experts that can testify regarding a particular issue. *See* [*Leefe*, 876 F.2d at 411]. Multiple experts may testify to the same conclusion if they approached their individual analyses from separate "vantage points." *See* [*Sanchez*, 2017 U.S. Dist. LEXIS 204892, 2017 WL 5643554]; [*Thomas*, 2018 WL 4095099, at *3]. Because "[i]t is difficult . . . to determine the necessity and cumulative effect of testimony by several experts," the Court has wide discretion in allowing experts to testify. See *Leefe*, 876 F.2d at 411.

*Parker v. John W. Stone Oil Distribs.*, *L.L.C.*, No. CV 18-3666, 2019 WL 3891574, at *3 (E.D. La. Aug. 19, 2019); *see also Farris v. Jefferson*, No. 6:19-CV-00108 LEAD, 2021 WL 4978693, at *1 (W.D. La. Oct. 25, 2021); *Matter of Savage Inland Marine, LLC*, No. 1:19-CV-536, 2021 WL 2935300, at *5 (E.D. Tex. Jan. 22, 2021).

In this case, while Johnson and Barnes reach similar conclusions and, in some instances, rely on the same standards, each approaches the issue from a different discipline, Johnson from that of architecture and Barnes from that as a safety professional. The Court has found both Johnson and Barnes to be sufficiently qualified in their respective fields to offer expert opinions. For this reason, the Court does not find the testimony cumulative or duplicitous. The Court denies Defendants' Motions in this regard.

## V.    CONCLUSION

For the forgoing reasons, the Motions in Limine of Family Dollar (Doc. 79), Southern

Development (Doc. 80) and Ferrellgas (Doc. 81) are, as detailed above, granted in part and denied in part.

       **IT IS FURTHER ORDERED** that the hearing on these motions currently set for September 16, 2025, at 9:30 a.m. is hereby **CANCELLED**.

       Signed in Baton Rouge, Louisiana, on <u>September 11, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**