# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FLORENCE STEWART

**CIVIL ACTION**

VERSUS

**NO. 23-314-JWD-EWD**

FAMILY DOLLAR, INC., ET AL.

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* ("*MSJ*" or "*Motion*") (Doc. 104) filed by Crossclaim Defendant Southern Development of Mississippi, Inc. ("Southern" or "SDM"). Crossclaim Plaintiffs Family Dollar, Inc. and Family Dollar Stores of Louisiana, LLC (collectively, "Family Dollar") filed an opposition. (Doc. 109.) Southern filed a reply. (Doc. 112.) Plaintiff Florence Stewart ("Plaintiff" or "Stewart") also opposed the *Motion*. (Doc. 108.) Southern filed a reply. (Doc. 111.) Oral argument is not necessary. The Court has considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the reasons stated below, the *Motion* is denied.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an incident at "Family Dollar Store # 02596 located at 3000 Highway 10, Jackson, LA." (*Statement of Material Facts* ("*SMF*"), Doc. 104-1 at ¶ 1.)[1] Plaintiff claims that on March 4, 2022, she tripped and fell on "a bolt securing a yellow bollard on the walkway outside the store." (*Id.* at ¶¶ 1–2.) Southern owns and built the premises where the Family Dollar store is located, pursuant to a Lease Agreement executed in 1994. (*Id.* at ¶¶ 3–4.) At the time the premises were built by Southern, there were no "propane gas sales kiosk or protective bollards on the walkway outside of the store." (*Id.* at ¶ 5.) Family Dollar and Ferrellgas, L.P. d/b/a Blue Rhino

---

[1] Unless otherwise indicated, when the Court cites to the *SMF* in support of a fact, that fact has been admitted by Family Dollar. *See* M.D. La. Civ. R. 56(f).

("Ferrellgas") entered into an agreement in February 2017, and a propane gas kiosk and protective bollards were added to the outside of the premises. (*Id.* at ¶ 6.)

Family Dollar and Ferrellgas did not seek authority from Southern to add the kiosk and bollards beyond the general permission given to Family Dollar in the Lease Agreement to make alterations to the premises without approval from Southern. (*Id.* at ¶ 7; *Response Statement of Material Facts* ("*RSMF*"), Doc. 109-1 at ¶ 7.) Southern did not receive any complaints about the kiosk and bollards prior to Plaintiff's incident. (*SMF*, Doc. 104-1 at ¶ 15.)

Plaintiff asserts claims against Family Dollar and Southern pursuant to Louisiana Civil Code Article 2317.1, for ruin, vice, or defect, and alternatively, for liability under Louisiana Revised Statutes § 9:2800.6 and § 9:3221, respectively. (Doc. 35 at 5–7.) Family Dollar then made a crossclaim against Southern, arguing that Southern was responsible for the maintenance of the bollards and thus owes Family Dollar indemnity for any damages owed to Plaintiff. (Doc. 20 at 2–3.)

## II.    RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." (emphasis in original))). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## III.   DISCUSSION

### a.  Parties' Arguments

#### i.  *MSJ* (Doc. 104)

##### 1.  <u>Southern Development Does Not Owe Indemnity to Family Dollar Under the Terms of the Lease Agreement</u>

Southern first argues that the Lease Agreement does not provide for the indemnification of either party. (Doc. 104-2 at 4.). Southern disputes Family Dollar's indemnification argument, claiming it misinterprets Southern's obligations as landlord. (*Id.*) The agreement between Family Dollar and Ferrellgas does provide for indemnification:

> Ferrellgas d/b/a Blue Rhino agrees to protect, defend, hold harmless and indemnify Retailer…from and against all claims, liability, damages, losses and expenses,…arising out of or resulting from Ferrellgas d/b/a Blue Rhino's negligent, willful or lawful actions or inactions…attributable to property damage, bodily injury, sickness, disease or death, is caused by acts or omissions of Ferrellgas d/b/a Blue Rhino, its subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable.

(*Id.* at 4.)

Southern argues that Plaintiff's claim revolves around the hazards associated with the bollards installed by Ferrellgas. (*Id.*) Southern points to the agreement between Family Dollar and Ferrellgas, saying that this is the exact scenario where Ferrellgas's indemnification provision would apply. (*Id.*)

Family Dollar's crossclaim centers on Southern's alleged responsibility for the continued maintenance of the bollards. (*Id.*) Southern points to this provision in the Lease Agreement with Family Dollar, which was executed on October 6, 1994:

> **12. MAINTENANCE AND REPAIR**. The landlords shall maintain, keep and repair, at their expense, all exterior portions of the building constituting part of the demised premises, including the roof, exterior walls, canopy, gutters, downspouts, doors, door closures, plate glass and also all structural portions of said building

4

whether the same be on the interior or exterior. In addition, the Landlords agree that they will be responsible for any major repairs and replacements to the plumbing, electrical, heating and air conditioning systems, and that they will keep the paved and marked parking, service and access areas maintained in a good state of repair and properly lighted…

(Doc. 104-4 at 6.)

Southern argues that Family Dollar's reliance on the language expressing the Landlord's obligations is misguided. (Doc. 104-2 at 5.) When the "demised premises" were built, they did not include the kiosk or bollards. (*Id.*) Southern thus highlights the following provision of the Lease Agreement:

**7. ALTERATIONS BY TENANT.** The tenant shall have the right and privilege at all times after the date of this lease to make, at its own expense, such changes, improvements, alterations and additions to the demised premises as the tenant may desire.

(Doc. 104-4 at 4.)

Southern does not dispute Family Dollar's ability to enter into an agreement with Ferrellgas to add a "propane gas kiosk and bollards." (Doc. 104-2 at 5.) However, it asserts that the Lease Agreement fails to address who has ownership of the alterations Family Dollar may make. (*Id.*) Southern insists that the bollards are not part of the "demised premises" and are owned and maintained by Ferrellgas. (*Id.*) It contends that any claims for failure to maintain the added equipment are thus a part of Family Dollar's Third-Party demand against Ferrellgas. (*Id.* at 6.)

Southern points the Court to Louisiana Civil Code Article 466 to support its contention that the bollards are not a component part of the premises, thus not within its scope of responsibility. (*Id.*) Article 466 provides that:

Things that are attached to a building and that, according to prevailing usages, serve to complete a building of the same general type, without regard to its specific use, are its component parts. Component parts of this kind may include doors, shutters, gutters, and cabinetry, as well as plumbing, heating, cooling, electrical, and similar systems.

5

Things that are attached to a construction other than a building and that serves its principal use are its component parts.

Other things are component parts of a building or other construction if they are attached to such a degree that they cannot be removed without substantial damage to themselves or to the building or other construction.

La. Civ. Code art. 466.

Southern claims that these bollards were put into the walkway area of the store by Ferrellgas and can be easily removed without damage. (Doc. 104-2 at 6.) The agreement between Ferrellgas and Family Dollar states that the bollards can be removed "in the event of remodeling, structural changes or other reasons outside of Ferrellgas, LP's control." (*Id*. at 6–7.) If the bollards can be moved, they are not a component part of the leased area. (*Id*. at 7.) Southern concludes that, per the Lease Agreement, its only responsibility was to provide continued maintenance of the parking spaces and access areas, neither of which are related to Plaintiff's accident. (*Id*.)

### 2.  Southern Does Not Have Custody Over the Bollards

Southern next argues that having custody or garde of something is a "broader concept than ownership," and it can be shared by multiple parties. (*Id*.) First, it contends that "courts look to the parties' actions and relationships to the thing causing injury" when deciding if multiple parties share custody. (*Id.* (citing *Gallina v. Hero Lands Co*., 03-0331 (La. App. 4 Cir. 10/07/03); 859 So.2d 758, 762).) Then, it lists the two-part test for determining custody or garde: "(1) whether the person bears such a relationship as to have the right of direction or control over the thing, and (2) what, if any, kind of benefit the person derives from the thing." (*Id.* (citing *Gallina*, 859 So. 2d at 762).)

For the first part of the test, Southern contends that the "thing" in the instant case is a bolt that was used to secure the bollard to the area in front of the Family Dollar. (*Id*.) Southern claims it is not the owner or custodian of the kiosk containing the propane tanks, nor is it custodian of the

bollards or bolts to secure the bollards to the walkway. (*Id*. at 7–8.) The original construction of the building did not include the kiosk or bollards. (*Id*. at 8.) Ferrellgas admitted in its 30(b)(6) deposition that while neither of its agreements with Family Dollar addressed ownership of the bollards, Ferrellgas understood that it retained ownership. (*Id*.) Therefore, Ferrellgas is the proper custodian of these "things," and Southern had no duty to maintain or alter "things" that do not belong to it. (*Id*.)

Thus, Southern requests that the Court grant the *Motion for Summary Judgment* because the responsibility for indemnifying Family Dollar, if indemnity is owed, lies with Ferrellgas pursuant to its agreement with Family Dollar. (*Id*. at 9.)

### ii. Family Dollar's Opposition (Doc. 109)

Family Dollar begins by arguing that the 1994 Lease Agreement expressly provides that it is Southern's responsibility to maintain the outside of the store, and requests that the Court deny Southern's *Motion for Summary Judgment*. (Doc. 109 at 1.) Family Dollar cites to various sections of the Lease Agreement including, first, the section on maintenance, which indicates that it is the landlord's obligation to maintain the exterior of the premises. (*Id*. at 2.) Next, Section 11(b) requires Family Dollar to maintain insurance covering personal injury for accidents occurring in the *interior* of the store. (*Id*.) Finally, Family Dollar was given the right to make changes or alterations to the premises. (*Id*.)

The provision for alterations to the premises granted Family Dollar the authority to contract with Ferrellgas to supply propane tanks and crash protection barricades. (*Id*.) However, regardless of this contract with Ferrellgas, Southern is still responsible for the maintenance of this area pursuant to sections 11 and 12 of the Lease Agreement. (*See* Doc. 109 at 2.) Thus, Family Dollar

requests that the Court deny Southern's *Motion for Summary Judgment* as the arguments made in their motion are contrary to the law at hand. (*Id*. at 2–3.)

### 1.    Southern Is Responsible for the Bollards

Family Dollar disagrees with Southern's argument regarding component parts of the leased premises. (*Id*. at 3.) While Family Dollar does not contest Southern's classification of the bollards as non-component parts, it insists that this does not allow Southern to escape liability for the failure to maintain this area. (*Id*.) Family Dollar argues that if the provisions of the Lease Agreement only apply to structures that existed at the time of execution, then Family Dollar would not be responsible for the store. (*Id*.) Thus, it avers that this narrow interpretation of the Lease Agreement leads to absurd results. (*Id*.)

The original Lease Agreement provides for a storefront construction and authorized Family Dollar to make additions to the demised premises, as addressed in Section 7. (*Id*. at 3–4.) Furthermore, Family Dollar contends that had Southern wanted to limit its obligation to maintain improvements made by the tenant, the Lease Agreement should have been negotiated to include these exceptions. (*Id*. at 4.) Thus, Family Dollar asserts that the Lease Agreement should be "applied as written." (*Id*.)

### 2.    Southern's Argument Regarding Garde is Wrong

Family Dollar asserts that Southern is still responsible for Plaintiff's injuries, regardless of Southern having garde of the bollards. (*Id*.) Family Dollar cites to Louisiana's Second Circuit Court of Appeal in which the court determined that "the garde analysis is outdated and immaterial in light of the 1996 amendments to La. C.C. art. 2317.1." (*Id*. (citing *Pamplin v. Bossier Par. Cmty. Coll.*, 38,533 (La. App. 2 Cir. 7/14/04); 878 So. 2d 889, 893–94, *writ denied*, 04-2310 (La.

1/14/05); 889 So. 2d 266).) Family Dollar explains that these amendments changed the standard for strict liability to one of negligence, and therefore Southern's garde analysis is irrelevant. (*Id*.)

Even if the Court were to consider garde, argues Family Dollar, Southern at a minimum shares garde with Ferrellgas. (*Id*. at 5.) Family Dollar, citing *Ducre v. Family Dollar Stores of La., Inc.*, No. 18-2308, 2019 WL 6464964, at *4 (E.D. La. Dec. 2, 2019), argues that multiple parties may have garde of a thing, "even when the thing is an exterior area such as a sidewalk abutting a store and the owner/lessor and lessee have entered into a Lease assigning responsibility for maintenance of the area." (*Id.* (citing *Ducre v. Family Dollar Stores of Louisiana, Inc*., No. 18-2308, 2019 WL 6464964, at *5 (E.D. La. Dec. 2, 2019).).) Further, the *Gallina* factors are satisfied here because (1) Southern maintained the required relationship with the bollards at issue due to the obligations of maintaining the exterior of the store, and (2) because Southern received benefits at the same level as Ferrellgas and Family Dollar due to protections provided by the bollards to prevent injury or destruction of property. (*Id.* (citing *Gallina*, 859 So. 2d at 762.).)

Additionally, Family Dollar insists that these are not the only factors to consider in respect to garde: "Under Louisiana law, the owner/lessor of a building is generally liable for the condition of the leased premises." (*Id*. at 6 (citing *Greer v. Sportsman's Hairadise, LLC*, 2017-0965, 2018 WL 1249410, at *2 (La. App. 1 Cir. 03/09/2018).) However, "[t]he presumption that an owner has garde of a thing may be rebutted by establishing a contractual undertaking by another to maintain and control the property." (*Id.* (quoting *Greer*, 2018 WL 1249410 at *2.).)

Family Dollar asserts that Southern had garde of the bollards, plates and bolts but admits that this responsibility may be shifted pursuant to a contract. (*Id*.) In this instance, Family Dollar points to the Lease Agreement, where it expressly states that maintenance obligations are only shifted to Family Dollar as to the *inside* of the store. (*Id*.) Family Dollar argues nothing in the

Lease Agreement shifts maintenance obligations to it as to the outside of the store, thus Southern maintains responsibility for the upkeep of the exterior. (*Id.*)

Finally, Family Dollar claims that Southern is independently liable "to the extent that it 'knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time." (*Id.* (quoting La. R.S. 9:3221).) Louisiana Revised Statute § 9:3221 imposes certain obligations on Southern as the property owner. (*Id.*) Southern "knew or should have known" of the defects and therefore was responsible for the maintenance and repair of the exterior of the building. (*Id.* at 6–7.) Therefore, Family Dollar asks the Court to deny Southern's *Motion for Summary Judgment*. (*Id.* at 7.)

### iii. *Reply* to Family Dollar's *Opposition* (Doc. 112)

Southern responds to Family Dollar's "argument that if the lease agreement does not apply to the subsequently added bollards, it would not apply to the building itself because it hadn't been built at the time the lease was executed." (Doc. 112 at 1.) Southern says that the parties entered into the Lease Agreement with the specific goal to build the building. (*Id.*) Therefore the building was expressly contemplated by the lease, which is different than shifting maintenance for any improvements made by Family Dollar. (*Id.*) Southern does not deny Family Dollar's right to make alterations to the premises pursuant to the Lease Agreement. (*Id.*) However, Southern contends that the Lease Agreement does not provide for its maintenance of these alterations, whether inside or outside of the store. (*Id.*) Southern also argues that Ferrellgas placed the equipment pursuant to Ferrellgas's agreement with Family Dollar. (*Id.* at 2.)

Southern argues that Louisiana Civil Code article 2696 requires it, as lessor, to warrant that the leased thing is free of defects or vices, so long as these defects are not attributable to the lessee. (*Id.* (quoting La. Civ. Code art. 2696).) In this case, the defect causing the accident was the fault

of Family Dollar and Ferrellgas. (*Id.*) Because this defective equipment was in place pursuant to an agreement outside the scope of Southern's purview, it argues that there is "no evidence that [it] had or should have had knowledge of issues with the bollards." (*Id.*) Thus, Southern insists it is not liable to Plaintiff and requests the Court to grant its *Motion*.

### iv.  Plaintiff's *Opposition* (Doc. 108)

Before addressing Plaintiff's opposition, the Court addresses Southern's objection to Plaintiff's attempt to oppose the *Motion*. (Doc. 111 at 1–2.) Plaintiff asserts that she has standing to oppose the *Motion* because she filed the main demand, and the discussion of shared garde here will impact her claim. (Doc. 108 at 2–3 (citing *Dorvin v. 3901 Ridgelake Dr., LLC*, No. 11-00696, 2012 WL 1057599, at *4 (E.D. La. Mar. 28, 2012)).) Southern responds in its *Reply* that Plaintiff lacks standing to oppose a motion on a crossclaim between two defendants. (Doc. 111 at 1–2.) Southern says that the case cited by Plaintiff only addresses a motion for summary judgment filed by a defendant against a plaintiff and does not address the situation here where Plaintiff is not involved in the crossclaim. (*Id.*)

While other district courts do not allow a co-defendant to oppose a defendant's motion for summary judgment, this is generally limited to motions that the plaintiff has not opposed. *Fucich Contracting, Inc. v. Shread-Kuyrkendall and Assocs., Inc.*, No. 18-2885, 2020 WL 1974248, at *1 n.4 (E.D. La. Apr. 24, 2020). Here, Family Dollar, co-Defendant in the main demand and Crossclaim Plaintiff, opposed the *Motion.* (Doc. 109.) Part of Southern's *Motion* deals with whether Southern has custody or garde over the bollards at issue. (Doc. 104-2 at 7–8.) This issue is also present in Southern's motion for summary judgment against Plaintiff, as Southern argues that it is not liable under Article 2317. (Doc. 106-2 at 4–5.) The summary determination of whether

Southern had garde over the bollards is common to both motions and would have an impact on Plaintiff's claim. Therefore, the Court will consider Plaintiff's opposition.

1.  There Is Genuine Issue of Material Facts Regarding Southern's Ownership of the Bollards and Bolts

Plaintiff argues that there is an issue of material fact regarding ownership and garde of the bollards and bolts, pointing to the following evidence. (Doc. 108 at 4–5.)

- "The lease agreement explicitly provided that Southern retained the contractual duty to maintain all exterior portions of the demised premises, including the access walkway areas where the subject bollards and bolts were located." (*Id.* at 5 (citing Doc. 104-4 at 6).)

- "The lease agreement explicitly provided that Family Dollar could make alterations to the demised premises without the consent of Southern." (*Id.* (citing Doc. 104-4 at 4).)

- "The lease agreement explicitly provided that Southern owed the contractual duty and obligation to ensure that the building and appurtenances remained in compliance with federal, state, and local building codes and ordinances." (*Id.* (citing Doc. 104-4 at 12).)

- "Southern possessed the right to enter into, inspect, and perform the maintenance and repair of the demised premises." (*Id.* (citing Doc. 104-4 at 6).)

- "No provision or clause in the lease agreement transferred, overrode, or conditioned Southern's duty to maintain and repair the demised premises." (*Id.*)

- "Southern entered and inspected the demised premises several times a year for purposes of maintenance and repairs." (*Id.*)

- "Southern derived economic benefit from leasing the demised premises for use as a 'variety store', 'discount store', 'dollar store', or 'variety discount store' by invitees of the public." (*Id.* (citing Doc. 104-4 at 3).)

- "Southern stands to receive a lump-sum 2% commission from gross sales exceeding $2,094,000 on an annualized basis, which includes propane tank sales." (*Id.* (citing Doc. 104-4 at 2).)

Plaintiff asserts that there is a factual dispute as to whether Southern retained the obligation, as property owner, to provide continued upkeep of the exterior of the leased premises. (*Id.*) Plaintiff's legal rights against Southern are not barred simply because Southern failed to include a "more specific" provision addressing fixtures installed by Family Dollar. (*Id.*)

Thus, Plaintiff concludes, if Southern wanted to deny third-party liability based on a defect of the exterior of the building, Southern should have "(1) transferred all maintenance and repair responsibilities for the exterior premises and building code compliance to Family Dollar and (2) should have included specific contractual provision expressly transferring maintenance and repair responsibility for subsequently installed fixtures to Family Dollar." (*Id.* at 5–6.)

2.  Southern's Failure to Include a Provision Transferring Maintenance and Repair Responsibilities to Family Dollar Creates a Genuine Issue of Material Fact

Plaintiff points the Court to *T.L. James & Co. v. Sam's Truck Serv., Inc.*, highlighting the principle that

> [w]hen the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.

(*Id.* at 6 (citing 03-1470 (La. App. 5 Cir. 05/26/04); 875 So. 2d 977, 980 (quoting La. Civ. Code art. 2054)).) Furthermore, Louisiana Civil Code Articles 2053 and 2054 require that "contractual ambiguities must be construed in light of equity, usage, and the parties' conduct." (*Id.* (quoting *T.L. James*, 875 So. 2d at 980).) "Where provisions of a contract do not specifically enumerate an

13

outcome of obligations between the parties, equity may be used as a factor by the court to resolve disputes . . . however, the use of equity in determining contractual obligations is contingent upon whether portions of the contract at issue are ambiguous." (*Id*. (quoting *T.L. James*, 875 So. 2d at 980).) Plaintiff argues that "[i]f the words of a contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the parties' true intent." (*Id*. at 7 (quoting *U.S., Inc. v. Stryker Demolition & Env't Servs., LLC*, 680 F. Supp. 3d 729, 734 (W.D. La. 2023)).) Plaintiff, quoting *Arcadis,* highlights that the determination of an ambiguous contract is a question of law:

> A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue, the terms of the written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.

(*Id.* (quoting *Arcadis*, 680 F. Supp. 3d at 734–35.).)

Plaintiff claims that the Lease Agreement is unambiguous. (*Id*.) The Lease Agreement indicates that Southern, as property owner, retained the duty to continue upkeep and repairs of the leased premises—both the interior and exterior. (*Id*.) Plaintiff argues that Southern cannot raise the issue of an ambiguous contract when the Lease Agreement indicates that any additions to the property are done with Southern's consent. (*Id*. at 7–8.) Should the Court find ambiguity regarding the contractual obligations of maintenance and repair for the installations, then Plaintiff asserts that the Court must turn to the extrinsic evidence. (*Id*. at 8.) Plaintiff contends that the application of extrinsic evidence creates an issue of material fact, and thus Southern is not entitled to summary judgment based on its duty of care as the property owner or as the party with a "shared garde" of the exterior portions of the premises. (*Id*.)

3. Southern's *Motion for Summary Judgment* Depends on the Application of Extrinsic Facts

14

Plaintiff agrees that ordinarily, "[c]ontract interpretation is a question of law" and "[i]f the interpretation of the language of a contract is the sole issue, then courts are likely able to resolve such matters on summary judgment because only questions of law are in controversy." (*Id.* at 3 (quoting *Arcadis*, 680 F. Supp. 3d at 734–35).) However, she asserts that "[i]n cases involving contractual ambiguity where there is relevant extrinsic evidence, courts must consider if 'the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law.'" (*Id.* (quoting *Arcadis*, 680 F. Supp. at 734).)

Plaintiff claims that Southern's assertion that the Lease Agreement is silent as to who owes the duty of maintenance and repair is based merely on conclusory statements. (*Id.*) She insists that a genuine issue of material fact remains. (*Id.* at 3–4.) Plaintiff says that Southern's assertions about the Lease Agreement's silence about maintenance of improvements, the definition of demised premises, the ownership of the bollards, and the benefit derived from the kiosk are all conclusory arguments not based in fact. (*Id.* at 4.) She asserts that Southern's statements "necessarily depend upon the application of extrinsic evidence," thus making summary judgment inappropriate here. (*Id.*)

### v. *Reply* to Plaintiff's *Opposition* (Doc. 111)

Southern argues that the Lease Agreement with Family Dollar does not provide for indemnification for either party. (Doc. 111 at 2.) Southern also asserts that Plaintiff's ambiguity argument is incorrect, as the Lease Agreement expressly states that Southern is to provide maintenance and upkeep to the exterior of the leased premise. (*Id.*) According to Southern, at the time the Lease Agreement was executed, the property was a blank slate—the gas kiosk and protective bollards were nonexistent. (*Id.*) Southern insists it continued with its obligations to provide maintenance and repairs of the premises as indicated within the Lease Agreement. (*Id.*)

Further, Southern argues that Plaintiff misinterprets the Lease Agreement. (*Id.*) Southern replies to each of Plaintiff's statements pulled from its memo, stating that the Lease Agreement "speaks for itself." (*Id.* at 2–3.) Southern cites to Josh McLeod's testimony in the Ferrellgas Rule 30(b)(6) deposition, where he stated that Ferrellgas retained ownership and responsibility of the kiosk and bollards. (*Id.* at 3.) Southern also highlights the agreement between Ferrellgas and Family Dollar, where it is provided that the kiosk and bollards can be moved when needed. (*Id.*)

According to Southern, Plaintiff provides no evidence supporting the argument that Southern receives benefits from the installation of the Ferrellgas equipment. (*Id.*) Family Dollar admitted that the gross receipts did not exceed the amount of $2,094,000.00. (*Id.* at 3–4.) Thus, Southern never received additional payments due to the propane sales. (*Id.*) Southern points to the agreement between Ferrellgas and Family Dollar, which provides that Ferrellgas will indemnify Family Dollar for injuries resulting from the equipment installation. (*Id.* at 4.) Because Ferrellgas admits to owning the equipment, as well as the obligation to maintain them, Southern insists it is not responsible for maintaining this equipment and therefore requests of the Court to grant its *Motion.* (*Id.*)

### b. Law and Analysis

#### i. Contractual Responsibility for Maintenance

##### 1. Applicable Law

Family Dollar's crossclaim alleges that, pursuant to the Lease Agreement between it and Southern, Southern owes a duty to indemnify Family Dollar in this matter. (Doc. 20 at 2–3.) "When reviewing a state law contract claim, a federal court in Louisiana is bound by the state's choice-of-law rules." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citing *Klaxon Co. v.*

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). There is no dispute that Louisiana law applies here.

The Louisiana First Circuit Court of Appeal has recently summarized the applicable law on leases:

> A lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. La. C.C. art. 2668. In all matters not provided for in the Title covering leases, the contract of lease is governed by the rules of the Titles of "Obligations in General" and "Conventional Obligations or Contracts." La. C.C. art. 2669.

*Domino Estate, LLC v. Brand Scaffold Servs.*, 20-191 (La. App. 1 Cir. 3/29/21); 322 So. 3d 1242, 1245.

Additionally, "[n]ontechnical words in a contract must be given their generally prevailing meaning, and each contract provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Greenwood 950, LLC v. Chesapeake La., LP*, 683 F.3d 666, 669 (5th Cir. 2012) (citing La. Civ. Code arts. 2047, 2050).

"Interpreting a contract is a matter of determining the parties' common intent." *Brock Servs., LLC v. Rogillio*, 936 F.3d 290, 298 (5th Cir. 2019) (citing La. Civ. Code art. 2045). "When a contract is unambiguous, [courts] look only to the four corners of the contract to interpret it." *Id.* (citing La. Civ. Code art. 2046). "A contract is ambiguous, however, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.' " *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996)).

"[W]hen the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be

ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties." *Brock Servs.*, 936 F.3d at 298 (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005)); *see also Scafidi v. Johnson*, 420 So. 2d 1113, 1115 (La. 1982) ("Between the parties to an instrument, parol evidence is admissible . . . to explain an ambiguity when such explanation is not inconsistent with the written terms . . . ." (quotation omitted) (cited with approval by *Brock Servs.*)).

"A doubtful provision must be interpreted 'in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.' " *Greenwood*, 683 F.3d at 669 (quoting La. Civ. Code art. 2053). "According to the Civil Code, *equity* 'is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another,' and *usage* is 'a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.' " *Id.* at 669 n.13 (quoting La. Civ. Code art. 2055).

Ultimately, because "[i]ntent is an *issue of fact* which is to be inferred from all the surrounding circumstances," *Guidry*, 512 F.3d at 181 (citations omitted), "when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper," *id.* (citing *Invs. Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 877–78 (5th Cir. 1970) (finding that dismissal on the pleadings was error when the contract at issue was ambiguous); *Gertler v. City of New Orleans*, 03-2131 (La. App. 4 Cir. 9/1/04); 881 So. 2d 792, 796, *writ denied*, 04-2649 (La. 1/7/05); 891 So. 2d 687 ("If the language of [a contract] is ambiguous or susceptible to multiple interpretations, the intent of the parties must be determined and summary judgment is inappropriate.")); *see also Liberty Mut. Ins.*

*Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996) ("[A]mbiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." (cited with approval by *Guidry*)); *Delaware Valley Fish Co. v. 3South LLC*, No. 21-141, 2023 WL 2416372, at *9–10 (M.D. La. Mar. 8, 2023) (deGravelles, J.) (denying summary judgment based on an ambiguous contract). "Granting summary judgment on an ambiguous contract may be appropriate only in the very rare circumstance where 'there is no issue of material fact concerning the pertinent intent' of the parties." *Guidry*, 512 F.3d at 181 n.5 (quoting *Sanders v. Ashland Oil, Inc.*, 96-1751 (La. App. 1 Cir. 6/20/97), 696 So. 2d 1031, 1035).

### 2. Analysis

The first section of Southern's *Motion* focuses on which entity was responsible for the maintenance of the kiosk and bollards under the Lease Agreement. (Doc. 104-2 at 4.) Section 12 of the Lease Agreement says:

> **12. MAINTENANCE AND REPAIR**. The Landlords shall maintain, keep and repair, at their expense, all exterior portions of the building constituting part of the demised premises, including the roof, exterior walls, canopy, gutters, downspouts, doors, door closures, plate glass and also all structural portions of said building whether the same be on the interior or exterior. In addition, the Landlords agree that they will be responsible for any major repairs and replacements to the plumbing, electrical, heating and air conditioning systems, and that they will keep the paved and marked parking, service and access areas maintained in a good state of repair and properly lighted…

(Doc. 104-4 at 6.)

> The "demised premises" are defined earlier in the Lease Agreement. (*Id.* at 1.)

> Together with a building containing 7,056 (84' x 84') square feet, to be constructed by the Landlords, as hereinafter provided, on the above-described premises along with the paved, marked, lighted parking, service and access areas shown on Exhibit B – Site Plan (said premises and the building and other improvements thereon, are hereinafter called 'demised premises') . . . .

(*Id.*) The Lease Agreement provides for changes to be made to the property:

**7. ALTERATIONS BY TENANT.** The tenant shall have the right and privilege at all times after the date of this lease to make, at its own expense, such changes, improvements, alterations and additions to the demised premises as the Tenant may desire.

(*Id.* at 4.)

Southern argues that it is not responsible for the bollards because the Lease Agreement did not contemplate this addition and is silent on the maintenance of alterations. (Doc. 104-2 at 5.) Southern's argument turns on whether the bollards are considered part of the "demised premises." (*Id.* at 5–6.) Southern interprets the Lease Agreement to be silent on the maintenance of improvements by Family Dollar, and Ferrellgas maintained the bollards. (*Id.*) Family Dollar interprets the Lease Agreement to mean that it is only responsible for maintenance inside the building, and Southern is responsible for maintenance outside. (Doc. 109 at 2–3.)

The Court finds that the provision discussing responsibility for maintaining the premises is ambiguous when addressing alterations and improvements made by Family Dollar. The Lease Agreement is silent as to the maintenance of alterations made by Family Dollar. The intent of the parties is unclear. Both parties' interpretations are reasonable. It is reasonable to conclude that the parties intended improvements to be covered under maintenance of the outside premises, since improvements were not carved out of that section, especially because Southern's obligation of maintenance included the obligation to "keep the . . . service and access areas maintained in a good state of repair." (Doc. 104-4 at 6.) It is also reasonable to conclude that, because the improvements could be made without Southern's express consent beyond the provision in the Lease Agreement, it would not be responsible for maintaining improvements made by Family Dollar.

Because the Lease Agreement is ambiguous, the parties may introduce parol evidence to determine the parties' intent. *See Brock Servs.*, 936 F.3d at 298. The evidence submitted in support

20

and in opposition to the *Motion* do not provide sufficient clarity on the intent of the parties to allow the Court to grant Southern's Motion. That is, construing all of the evidence in a light most favorable to Family Dollar and drawing reasonable inferences in its favor, a reasonable jury could conclude that Family Dollar's interpretation of the Lease Agreement is the correct one. Thus, because the intent of the parties is an issue of fact, there remains a genuine issue of fact that precludes summary judgment here. *Guidry*, 512 F.3d at 181. The Court will deny the *Motion* on this ground.

### ii. Custody and Control

#### 1. Applicable Law

The parties do not dispute that Louisiana law applies to Plaintiff's tort claim regarding the custody, control and garde of the allegedly defective walkway. Plaintiff has sued Southern and Family Dollar pursuant to Louisiana Civil Code Article 2317, which says: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the acts of persons for whom we are answerable, or of things which we have in our custody. This, however, is to be understood with the following modifications." La. Civ. Code art. 2317. One of those modifications provides that

> [t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1.

In order for a plaintiff "to recover for damages caused by a defective thing, a plaintiff must prove:

> '(1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm,

(3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care. If the plaintiff fails to provide proof any one of these elements, his/her claim fails.' "

*Arceneaux v. Am. Trucking & Transp. Ins. Co. Risk Retention Grp.*, No. 21-30196, 2022 WL 488052, at \*3 (5th Cir. Feb. 17, 2022) (quoting *Riggs v. Opelousas Gen. Hosp. Tr. Auth.*, 08-591 (La. App. 3 Cir. 11/5/08); 997 So. 2d 814, 817).

The Fifth Circuit has given the test for determining if one has custody or garde of an object.

The first requirement for [custodial] liability is that "[t]he *thing* which caused injury must be in the care, custody and control of the defendant." *Palermo v. Port of New Orleans*, 951 So. 2d 425, 438 (La. App. 2007) (emphasis added); *accord Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 565 (5th Cir. 2003). "Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 913 (5th Cir. 1997); *accord Davis v. Riverside Court Condo. Ass'n Phase II, Inc.*, 154 So. 3d 643, 648 (La. App. 2014) ("[I]n determining whether a thing is in one's custody or *garde*, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." (alteration in original) (quoting *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1009 (La. 2000))).

*Butler v. Denka Performance Elastomer, LLC*, 16 F.4th 427, 441–42 (5th Cir. 2021); *see also Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 617 n.10 (5th Cir. 2018); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 838 F. Supp. 2d 497, 511 (E.D. La. 2012).

"Generally, '[d]etermining who has the custody or garde of the thing is a fact driven determination." *Butler*, 16 F.4th at 442 (quoting *Dupree*, 765 So. 2d at 1009).

Moreover, because Article 2317 imposes liability upon persons for things in their custody or garde, a principle much broader than ownership, it is clear that more than one party may have custody or garde of a thing under LA. CIV. CODE art. 2317, determined by an examination of the parties' actions and relationships to the thing causing the injury.

*Dupree*, 765 So. 2d at 1009 (citing *King v. Louviere*, 543 So. 2d 1327, 1329 (La. 1989)).

2.  Analysis

There remains a factual dispute here as to who owns the bollards and who retained control over them. Under the Lease Agreement, Southern owns the premises and Family Dollar leases the premises. (Doc. 104-4 at 16.) But it is silent as to ownership of improvements made to the demised premises. (*Id.*) As discussed above, the Lease Agreement is ambiguous as to who has the responsibility for maintenance of improvements by the tenant that are outside the store.

Part of the Chain Propane Tank Exchange Agreement between Family Dollar and Ferrellgas says that "[d]isplays are the property of Blue Rhino [Ferrellgas], and not transferrable." (Doc. 104-5 at 24.) The Exchange Agreement further says that Ferrellgas will install any Crash Protection required and will relocate the Crash Protection when needed "due to store renovations, structural changes or other reasons outside of [Ferrellgas's] control." (Doc. 104-5 at 24.) Josh McLeod, on behalf of Ferrellgas, said in his deposition that it was his understanding that Ferrellgas would maintain the kiosk and crash protection, but there was no provision in the contract reflecting that understanding. (Doc. 104-6 at 8–9.) Ferrellgas did not have any formal process for maintenance of the crash protection and relied on its delivery drivers to report any problems. (*Id.* at 9–10.)

There is a genuine issue of material fact here. The parties do not agree as to who exercises control over the bollards. The ownership and responsibility for maintenance of the bollards turns on the interpretation of an ambiguous contract. It is possible that only one of the defendants to the main claim had custody or control over the bollard, but it is also possible that all three shared responsibility. This depends on (1) the interpretation of the agreements between Southern and Family Dollar and between Family Dollar and Ferrellgas and (2) an examination of the circumstances surrounding the maintenance of the bollards. Because determination of custody or

garde is a fact-intensive inquiry, this question should be left to the jury. Southern's *Motion* will be denied on this ground.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 104) filed by Crossclaim Defendant Southern Development of Mississippi, Inc. is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>September 18, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**