UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FLORENCE STEWART | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 23-314-JWD-EWD |
| FAMILY DOLLAR, INC. ET AL. | |

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Summary Judgment* ("*MSJ*" or "*Motion*") (Doc. 106) filed by Defendant Southern Development of Mississippi, Inc. ("Southern" or "SDM"). Plaintiff Florence Stewart ("Plaintiff" or "Stewart") opposes the *Motion*. (Doc. 110.) Southern filed a reply. (Doc. 114.) Defendants Family Dollar Stores of Louisiana, LLC and Family Dollar, Inc. (collectively "Family Dollar") filed a response to the *Motion*. (Doc. 113.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted in part and denied in part.

**I.    RELEVANT FACTUAL BACKGROUND**

This case stems from an incident "at Family Dollar Store # 02596 located at 3000 Highway 10, Jackson, LA." (*Statement of Material Facts* ("*SMF*"), Doc. 106-1 at ¶ 1.)[1] Plaintiff claims that on March 4, 2022, she tripped and fell on "a bolt securing a yellow bollard on the walkway outside the store." (*Id.* at ¶¶ 1–2.) Southern owns and built the premises where the Family Dollar store is located, pursuant to a Lease Agreement executed in 1994. (*Id.* at ¶¶ 3–4.) At the time the premises were built by Southern, there were no "propane gas sales kiosk or protective bollards on the

---

[1] Unless otherwise indicated, when the Court cites to the *SMF* in support of a fact, that fact has been admitted by Plaintiff. *See* M.D. La. Civ. R. 56(f).

walkway outside of the store." (*Id.* at ¶ 5.) Family Dollar and Ferrellgas, L.P. d/b/a Blue Rhino ("Ferrellgas") entered into an agreement in February 2017, and a propane gas kiosk and protective bollards were added to the outside of the premises. (*Id.* at ¶ 6.)

Family Dollar and Ferrellgas did not seek authority from Southern to add the kiosk and bollards beyond the general permission given to Family Dollar in the Lease Agreement to make alterations to the premises without approval from Southern. (*Id.* at ¶ 7; *Response Statement of Material Facts* ("*RSMF*") Doc. 110-1 at ¶ 7.)

Plaintiff asserts claims against Family Dollar and Southern pursuant to Louisiana Civil Code Article 2317.1, for ruin, vice, or defect, and alternatively, for liability under Louisiana Revised Statutes § 9:2800.6 and § 9:3221, respectively. (Doc. 35 at ¶¶ 16, 21.)

## II. RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477

U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

**III.    DISCUSSION**

    **a.  Parties' Arguments**

        **i.  *MSJ* (Doc. 106)**

            1.  La. R.S. § 9.2800.6

Southern moves for summary judgment to dismiss Plaintiff's claims. (Doc. 106-2 at 1). It first argues Plaintiff's merchant's liability claim under Louisiana Revised Statutes § 9:2800.6 against it fails because it is not a merchant as defined under § 9:2800.6(C)(2). (*Id.* at 3–4.)

            2.  Garde

Southern also argues there is insufficient proof to establish that it is liable under Louisiana Civil Code article 2317.1 because Southern did not have garde of the allegedly defective bolt. (*Id.* at 4–10.) Southern claims under Louisiana Civil Code article 2317.1, to determine if there is shared custody or garde, the Court must "look to the parties' actions and relationships to the thing causing injury [to find shared custody]." (*Id*. at 5 (citing *Gallina v. Hero Lands Co.*, 03-331, pp. 4–5 (La. App. 4 Cir. 10/7/03); 859 So. 2d 758, 762 (citing *Dupree v. City of New Orleans*, 99-3651, p.7 (La. 8/31/00); 765 So. 2d 1002, 1009)).)

Under Louisiana Civil Code article 2317.1, two factors must be met for the Court to find Southern had garde. (*Id*.) First, Plaintiff must establish Southern had "such a relationship as to have the right of direction or control over the thing [causing injury]," and second, Southern must have derived some sort of benefit from the thing causing injury. (*Id.* (citing *Gallina*, 859 So. 2d at 762 (citing *Dupree*, 765 So. 2d at 1009)).) Southern identifies the "bolt utilized to fasten [the] protective bollard" as the "thing" in the case that caused the injury. (*Id.* (citing Doc. 1-4).)

4

a. <u>Custody and Control</u>

Southern contends it cannot be liable under Louisiana Civil Code article 2317.1 because the Lease Agreement did not grant Southern custody and control over the bollards and bolts. (*Id.* at 6.) Furthermore, it never owned the bollards and had no relationship to them. (*Id.* at 6–8.) "The kiosk and bollards were erected by the agreement between Family Dollar and Ferrellgas in 2017 some 23 years after the original construction of the premises." (*Id.* at 5.)

Southern does not dispute it had an obligation to maintain certain areas under Lease Agreement Section 12. (*Id.* at 7.)

> **12. MAINTENANCE AND REPAIR**. The Landlords shall maintain, keep and repair, at their expense, all exterior portions of the building constituting part of the demised premises, including the roof, exterior walls, canopy, gutters, downspouts, doors, door closures, plate glass, and also all structural portions of said building whether the same be on the interior or exterior. In addition, the Landlords agree they will be responsible for any major repairs and replacements to the plumbing, electrical, heating and air conditioning systems, and that they will keep the paved and marked parking, service and access areas maintained in a good state of repair and properly lighted . . . .

(Doc. 106-3 at 8.)

But Southern insists that its obligation to maintain the premises did not include the bollards or fasteners. (Doc. 106-2 at 7 (quoting Doc. 106–3 at 8).) The Lease Agreement is silent as to who bears responsibility for the repair and maintenance of alterations made by Family Dollar. (*Id.* (citing Doc. 106-3).) The Lease Agreement likewise "is silent as to ownership of any alterations or improvements made by the tenant." (*Id.*)

Because the bollards were not a part of the demised premises, Southern argues they did not fall under its responsibility of maintenance as laid out in Section 12. (*Id.* (citing Doc. 106-3).) The bollards are not part of the demised premises because they were not part of the original construction

5

and can be removed without substantial damage to the building and bollards themselves. (*Id.* at 8 (citing La. Civ. Code art. 466; Doc. 106-8 at 2–3; Doc. 106-9 at 2–4; Doc. 106-10 at 2–4).)

Southern instead shifts responsibility to Ferrellgas, arguing the Rule 30(b)(6) testimony of Ferrellgas' corporate representative, coupled with Louisiana Civil Code article 493, makes clear "[t]he bollards belong to Ferrellgas." (*Id.* at 7–8 (citing La. Civ. Code art. 493; Doc. 106-6 at 2–3).) Southern points to the testimony of Josh McLeod, the corporate representative of Ferrellgas, saying the bollards are Ferrellgas property and that Ferrellgas had the responsibility to maintain them. (*Id.* at 7 (citing Doc. 106-6 at 2–3).) Additionally, Southern maintains that Ferrellgas's claim to ownership over the bollards is supported by Louisiana law providing that an "other construction[] permanently attached to the ground . . . made on the land of another with his consent belong[s] to him who made [the other construction[.]" (*Id.* at 7–8 (quoting La. Civ. Code art. 493).)

b. Benefit

Southern also argues that it derived no benefit from the kiosk and bollards. (*Id.* at 9.) Southern anticipates Plaintiff will argue that Southern derived a benefit from excess yearly sales, in part brought by propane sales. (*Id.* (citing Doc. 106-3 at 4).) Southern asserts that no evidence exists to establish such a benefit. (*Id.*)

Section 1 of the Lease Agreement provides, in relevant part, that Southern shall receive "'[i]n addition to the fixed minimum rent mentioned to the preceding paragraph, two percent (2%) [of] the gross sales in excess of $2,094,000 made by Tenant on the demised premises during each lease year period." (*Id.* (citing Doc. 106-3 at 4).) Southern points to Family Dollar's corporate representative Brian Deutsch's deposition, where Deutsch testified there were no known instances where Southern derived a benefit under Section 1, let alone any such benefit since Family Dollar began to sell propane. (*Id.* (citing Doc. 106-7 at 65:21–67:16).) Therefore, Southern claims that

6

liability under Louisiana Civil Code article 2317.1 cannot be established because "at no point has Southern benefited in any way from Family Dollar's [propane gas sales]." (*Id.*)

### ii. *Opposition* (Doc. 110)

Plaintiff argues under the Lease, Southern maintained control over the premises, creating a genuine issue of material fact precluding Southern's *Motion for Summary Judgment* (Doc. 106-2). (Doc. 110 at 1–2.)

First, Plaintiff argues Southern's motion does not rely on material facts, but rather "relies on self-serving legal conclusions . . . ." (*Id.* at 2.) Restating factual allegations of the pleading and assertions of legal conclusions are not personal knowledge for purposes of establishing a dispute of material facts; rather, personal knowledge for purposes of establishing a material fact is limited to what "a witness actually saw or heard . . . ." (*Id.* (quoting *Roach v. Moffatt*, 55,415 (La. App. 2 Cir. 1/10/24); 379 So. 3d 268, 272).)

Plaintiff argues that Southern also relies on the "self-serving legal conclusion" that Southern did not have direction and control over the equipment. (*Id.* at 2–3 (citing Doc. 106-2 at 9).) Plaintiff contends the determination of garde "is the fundamental legal issue before the Court; it is not a statement of fact." (*Id.* at 3.) As to that issue, there are disputed facts indicating Southern maintained custody and control over the bollards and bolt. (*Id.* at 5.)

#### 1. Interpretation of the Lease Agreement

Plaintiff argues that Southern's motion should be denied because a genuine issue of material fact exists concerning the interpretation of the Lease Agreement. (*Id.* at 3.) If the Lease Agreement is found to be silent as to who was responsible for the maintenance of the bollards, the property owner's general duty of care mandated by Louisiana Civil Code article 2317.1 governs.

7

(*Id.* (citing La. Civ. Code art. 2317.1).) There is no dispute Southern owned the demised premises, and thus Southern had the duty to maintain it with due care. (*Id.*)

But Plaintiff argues that the Lease Agreement is not, as contended by Southern, silent on the issue of its obligation to maintain because under Section 12, Southern undertook the responsibility to maintain the building's exterior. (*Id.* (citing Doc. 110-7 at 6).) Plaintiff claims that Southern retained direction and control over the bolt and bollard at issue because they "were installed in the access walkway area" located at the exterior portion of the demised premises, part of the area Southern agreed to maintain. (*Id.* (citing Doc. 110-7 at 8 ¶ 12).)

Alternatively, Plaintiff argues that if the Lease is indeed silent, it is ambiguous, thus raising an issue "not suited for summary judgment" since "[c]ontractual ambiguities must be construed in light of equity, usage, and the parties' conduct." (*Id.* at 4 (citing *T.L. James & Co. v. Sam's Truck Serv., Inc.*, 03-1470 (La. App. 5 Cir. 5/26/04); 875 So. 2d 977, 980).) Because Southern retained an implied duty of care under the contract "necessary for the contract to achieve its purpose," Plaintiff contends summary judgment would be improper. (*Id.* (quoting *T.L. James & Co.*, 875 So. 2d at 980).) Plaintiff maintains that through equity, usage, and the parties' conduct, the ambiguity in the Lease has created a need for interpretation "not suited for summary judgment." (*Id.*)

### 2. Shared Garde

Plaintiff next argues that there is a genuine issue of material fact as to who had custody or garde over the bollards. (*Id.* at 5.) She first points to Southern's claim that the kiosk and bollards were added without Southern's "authorization or knowledge . . . [,]" arguing that it conflicts with Southern's implicit consent and authorization to the construction pursuant to the Lease Agreement (*Id.* (citing Doc. 110-7 at 4)). Plaintiff says Southern cannot disclaim its warranty that the bollard and bolts were free of hazardous conditions when "Southern knowingly retained its contractual

8

responsibility to perform maintenance and repair of the exterior portions and access walkway areas." (*Id.* (citing Doc. 110-7 at 6)). Finally, a dispute exists as to whether the bollard and bolts could be removed without causing damage. (*Id.* (citing Doc. 110-4 at 2).) Plaintiff alleges that "Southern failed to address the substantial damage that would occur to the building's concrete foundation if the subject bolts were removed from the concrete foundation . . . [,]" conflicting with Southern's argument the bolts could be removed without substantial damage to the store. (*Id.* (citing Doc. 110-4 at 2).)

Plaintiff claims that Section 7, which allows Family Dollar to make alterations to the premises, does not "absolve Southern of its contractual responsibility for maintaining the access walkway areas." (*Id.* at 6.) She says that, reading the Lease Agreement as a whole, Southern implicitly agreed to maintain any alterations to the outside of the premises made by Family Dollar. (*Id.*) Southern's property manager testified that he would conduct site visits to the Family Dollar store in question and knew about the kiosk and bollards. (*Id.*) Yet "Southern never disclaimed it[s] contractual responsibility either orally or in writing." (*Id.*)

Plaintiff maintains that Southern at least shared control of the bollards with Family Dollar and Ferrellgas. (*Id.* at 7.) The facts show that the bollards and their bolts became component parts of the premises, and Southern assumed responsibility for them through the Lease Agreement. (*Id.*)

Plaintiff contends that since Southern did not relinquish direction and control through contract, nor through usufruct, Southern still had garde over the bollards. (*Id.*) The facts may indicate shared garde, which would call for a comparative fault analysis. (*Id.*) This creates "a question of fact not suited for summary judgment." (*Id.*)

9

3. <u>Benefits</u>

Finally, Plaintiff relies on the Lease Agreement, as well as other factors, to argue that Southern is responsible for the bollards under Louisiana Civil Code article 2317.1 through "the financial benefits test." (*Id.*) Summary judgment is improper, contends Plaintiff, because there is a dispute as to whether Southern was receiving a financial benefit from the property. (*Id.*) Plaintiff argues the Court must presume Southern was deriving a financial benefit, leaving the degree of custody and control of the leased premises as a question of fact. (*Id.* at 7–8 (citing *Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc.*, 05-1285 (La. App. 3 Cir. 4/12/06); 928 So. 2d 703, 706, *writ denied*, 06-1120 (La. 9/1/06); 936 So. 2d 206).)

To support the presumption of derived financial benefit, Plaintiff points to the rental payments made to Southern. (*Id.* at 8–9.) Plaintiff argues Southern cannot dispute deriving a financial benefit from propane sales because the financial benefit derived from rent cannot be isolated from proceeds of the propane tank sales. (*Id.* at 9.) "Family Dollar pays its rent to Southern from the gross proceeds earned from the sale of all classes of products." (*Id.*)

Plaintiff argues when ownership and possession are disputed in a lease, whether a duty of garde is imposed by the law is a factual inquiry. (*Id.* at 8 (citing *Roberson*, 928 So. 2d at 706).) Finally, Plaintiff claims that "more than one party may have custody or *garde* of a thing." (*Id.* (quoting *Ducre v. Fam. Dollar Stores of Louisiana, Inc.*, No. 18-2308, 2019 WL 6464964 at *5 (E.D. La. Dec. 2, 2019) (citing *Dupree*, 765 So. 2d 1002; *Greer v. Sportsman's Hairadise LLC*, 17-965, 2018 WL 1249410 (La. App. 1 Cir. 3/9/18))) (emphasis added) (internal quotation marks omitted).)

### iii. *Reply* (Doc. 114)

Southern reminds the Court that custody or garde is a concept broader than ownership. (Doc. 114 at 2 (citing *Gallina*, 859 So. 2d at 762).) Southern argues that summary judgment is proper because it did not have a sufficient relationship to the equipment to have "the right of direction or control over the thing," and because Southern derived no benefit from the equipment. (*Id*. (citing *Gallina*, 859 So. 2d at 762).)

Looking first to the relationship, Southern argues that because it had no input over "where[,] when[,] and how the equipment was installed. . . . The element of control . . . is absent." (*Id.*) Next, Southern argues the benefit element has not been established, arguing that the rent has not changed since the store was built in the 1990s, even with the introduction of gas sales in 2017. (*Id*. (citing Doc. 106-5; Doc. 106-7 at 2–3).)

Next, Southern argues Plaintiff incorrectly classifies the bollards as a permanent part of the store. (*Id.*) Southern asserts that the bollards can be removed without significant damage to the premises. (*Id.* at 2–3.) It contends that this is a fact not in dispute by Southern, Ferrellgas, and Plaintiff's expert. (*Id.* (citing Doc. 106-9 at 2–3).)

Southern argues that under Louisiana Civil Code article 2696, its warranty against vices and defects on the property only extends to the defects that "are not attributable to the fault of the lessee." (*Id.* at 3 (quoting La. Civ. Code art. 2696) (emphasis omitted).)

Finally, Southern distinguishes *Ducre*, *Dupree*, and *Greer* from this case. (*Id.*) Southern argues that where *Greer* and *Ducre* address issues present in the building when originally leased, here the bollards were added by Ferrellgas pursuant to an agreement with Family Dollar. (*Id.* (citing *Ducre*, 2019 WL 6464964, at *2; *Greer*, 2018 WL 124910, at *1–2).) Additionally, Southern argues *Dupree* is distinguishable because control was taken prior to the accident, where

11

in the present case, Southern argues it never took control. (*Id.* (citing *Dupree*, 765 So. 2d at 1010–14).)

### iv. Family Dollar's *Response* (Doc. 113)

In response to Southern's *Motion for Summary Judgment*, Family Dollar filed a response to preserve its *Crossclaim* against Southern Development. (Doc 113.) Family Dollar directs the Court to its *Memorandum in Opposition to Southern Development of Mississippi, Inc.'s Motion for Summary Judgment* (Doc. 109). (*Id.*) Family Dollar's *Opposition* is more thoroughly discussed in this Court's ruling on Southern's *Motion for Summary Judgment* on Family Dollar's crossclaim. In short, Family Dollar does not oppose the dismissal of Plaintiff's claims but argues that Southern does have custody or garde over the bollards that allegedly caused Plaintiff's injuries. (Doc. 113 at 1–2.)

### b. Law and Analysis

#### i. La. R.S. § 9:2800.6

Southern makes a very brief argument that it has no liability as a merchant under Louisiana Revised Statutes § 9:2800.6(C). (Doc. 106-2 at 3–4.) Southern notes that in Plaintiff's original state court petition, Plaintiff asserted a claim against it for merchant's liability under § 9:2800.6. (Doc. 106-2 at 3–4) but in her *Amended Complaint*, she did not do so (Doc. 35 at ¶ 21). Instead, she asserts liability under § 9:3221, which says:

> Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.

La. R.S. § 9:3221.

This provision makes no mention of merchants and does not require the owner to be a merchant. Plaintiff does not dispute that Southern is not a merchant. Because Plaintiff has not disputed this argument, the Court will grant the *Motion* in part on the ground that Southern is not a merchant as defined in § 9:2800.6(C)(2).

### ii. Garde

#### 1. Applicable Law

The parties do not dispute that Louisiana law applies to Plaintiff's tort claim regarding the custody, control and garde of the allegedly defective walkway. Plaintiff has sued Southern, Family Dollar, and Ferrellgas pursuant to Louisiana Civil Code Article 2317, which says: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the acts of persons for whom we are answerable, or of things which we have in our custody. This, however, is to be understood with the following modifications." La. Civ. Code art. 2317. One of those modifications provides that

> [t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1.

> In order for a plaintiff
>
> to recover for damages caused by a defective thing, a plaintiff must prove: '(1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm, (3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care. If the plaintiff fails to provide proof any one of these elements, his/her claim fails."

13

*Arceneaux v. Am. Trucking & Transp. Ins. Co. Risk Retention Grp.*, No. 21-30196, 2022 WL 488052, at *3 (5th Cir. Feb. 17, 2022) (quoting *Riggs v. Opelousas Gen. Hosp. Tr. Auth.*, 08-591 (La. App. 3 Cir. 11/5/08); 997 So. 2d 814, 817.

The Fifth Circuit has provided the following test for determining if one has custody or garde of an object.

> The first requirement for [custodial] liability is that "[t]he *thing* which caused injury must be in the care, custody and control of the defendant." *Palermo v. Port of New Orleans*, 951 So. 2d 425, 438 (La. App. 2007) (emphasis added); *accord Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 565 (5th Cir. 2003). "Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 913 (5th Cir. 1997); *accord Davis v. Riverside Court Condo. Ass'n Phase II, Inc.*, 154 So. 3d 643, 648 (La. App. 2014) ("[I]n determining whether a thing is in one's custody or *garde*, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." (alteration in original) (quoting [*Dupree*, 765 So. 2d at 1009])).

*Butler v. Denka Performance Elastomer, LLC*, 16 F.4th 427, 441–42 (5th Cir. 2021); *see also Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 616 n.10 (5th Cir. 2018); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 838 F. Supp. 2d 497, 511 (E.D. La. 2012).

"Generally, '[d]etermining who has the custody or garde of the thing is a fact driven determination." *Id.* at 442 (quoting *Dupree*, 765 So. 2d at 1009).

> Moreover, because Article 2317 imposes liability upon persons for things in their custody or garde, a principle much broader than ownership, it is clear that more than one party may have custody or garde of a thing under LA. CIV. CODE art. 2317, determined by an examination of the parties' actions and relationships to the thing causing the injury.

*Dupree*, 765 So. 2d at 1009 (citing *King v. Louviere*, 543 So. 2d 1327, 1329 (La. 1989).

14

2. <u>Analysis</u>

The same factual dispute as to garde that is present in Southern's motion for summary judgment against Family Dollar is present here. (*See* Doc. 125.) There remains a genuine issue of material fact as to who owned and/or had garde of the bollards, plates and bolts under the Lease Agreement. Southern owned the premises and Family Dollar leased it. (Doc. 106-3 at 18.) But the lease is silent as to ownership of improvements. (*Id.* at 6.) As discussed in more detail in the ruling on Southern's motion against Family Dollar, the Lease Agreement is ambiguous as to who has the responsibility for maintenance of improvements by the tenant that are outside the store. (*See* Doc. 125.)

Part of the Chain Propane Tank Exchange Agreement between Family Dollar and Ferrellgas says that "[d]isplays are the property of Blue Rhino [Ferrellgas], and not transferrable." (Doc. 104-5 at 22.) The Exchange Agreement further says that Ferrellgas will install any Crash Protection required and will relocate the Crash Protection when needed "due to store renovations, structural changes or other reasons outside of [Ferrellgas's] control . . . ." (*Id.* at 24.) Josh McLeod, on behalf of Ferrellgas, testified that it was his understanding that Ferrellgas would maintain the kiosk and crash protection, but there was no provision in the contract reflecting that understanding. (McLeod Dep., Doc. 104-6 at 8–9.) Ferrellgas did not have any formal process for maintenance of the crash protection and relied on its delivery drivers to report any problems. (*Id.* at 10.)

There is a genuine issue of material fact here. The parties disagree as to who exercised control over the bollards. The ownership and responsibility for maintenance of the bollards turns in part on the interpretation of an ambiguous contract. It is possible that only one of the defendants to the main claim had custody or control over the bollards and bolts, but it is also possible that all three shared responsibility. This depends on (1) the interpretation of the agreements between

Southern and Family Dollar and between Family Dollar and Ferrellgas and (2) an examination of the facts and circumstances surrounding the maintenance of same. Because determination of custody or garde is a fact-intensive inquiry, this question should be left to the jury. Southern's *Motion* will be denied on this ground.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 106) filed by Defendant Southern Development of Mississippi, Inc. is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* is **GRANTED IN PART** as to any claim that Southern is a merchant as defined in § 9:2800.6(C)(2).

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* is **DENIED** on all other grounds.

Signed in Baton Rouge, Louisiana, on September 18, 2025.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**